County of Cook v. Sexton.

## County of Cook

v.

## Patrick J. Sexton.

1. BREACH OF CONTRACT—DAMAGES.—The rule as to the measure of damages where a building contract is broken by one party who delays the other party, and such other party, after notice that he will c'aim damages, proceeds and finishes the work, is to allow the second party to retain the contract so far as it can be traced, and to recover the contract price, and in addition such damages or increased compensation after the time for the completion of the contract had expired, as he can show was the proximate result of any breach of the contract, express or implied, by the first party. In favor of the first party, all provisions in such contract should remain in force until their final completion by the second party, except as to the time of fulfillment, and the compensation, where affected by breaches by the first party.

2. INSTRUCTION.—As the instruction in this case wholly ignores the clause in appellee's contracts that appellant should not be responsible for damages caused by delays occasioned by other contractors, it is erroneous.

3. QUESTION FOR COURT.—In an action on a contract, it is error for the court to instruct the jury to construe the meaning of the contract.

APPEAL from the Circuit Court of Will county; the Hon. J. McRoberts, Judge, presiding. Opinion filed February 5, 1885.

There were origina ly three separate actions of assumpsit brought by the appel ee against the appellant to recover damages occasioned by de ay to appellee by appellant failing to perform its covenants in three contracts existing between the parties to build portic ns of the court house of appellants, and the three suits were t y stipulation of the parties consolidated into one action for tl e purposes of trial and determination. Formal pleadings wel e waived and the several causes as one suit were to be heard. considered and determined upon such legal evidence as migl t be deemed competent by the court for the establishment of t ie claims of the appellee or the defense of the appellant, the r ght of appeal or writ of error on behalf of either party being eserved; that all evidence submitted to the jury under the coi imon counts, subject to any and all exceptions thereto for ncompetency or irrelevancy might be taken by either party; that the findings of the facts should be separately stated in su h findings, as well as the conclusions in the aggregate in respe t to the several claims of the appellee, and that such findings with the conclusions therefrom should be embodied in a verd ct to be entered of record in the consolidated cases, to any part of which findings and verdict, and the conclusions therefi m, either party might except, with the right of appeal or wri of error; that the aggregate of the claims of the appellee hould be the sum of the damages mentioned in the *ad dam um* clauses of the several declarations. That the claims of the appellee are as follows:

Damages on account of delay occasioned by the defendant to plaintiff in the perfo 'mance of his contract of June 30, 1879, for fire-proof work an carpentry of the Cook county court house, as follows:

First—On carpenter w rk.....................$21,000 00
Second—On fire-proof work................... 4,538 45
Third—Balance due ui der carpentry contract.... 4,379 55

Total........... ........................$29,918 00

Damages on account f delay caused by defendant to plaintiff in the performance f his contract of November 23, 1876, for the masonry, brick i nd iron-work of the new court house,

and in consequence of the enhanced value of work and material after the time limited for the completion of said contract, and account of failure to pay in money upon estimates:

On masonry, brick and iron work .............. $110,000 00
Discount on county orders .................... 25,296 01

Total................................... $135,296 01

Balance due the plaintiff from defendant upon his contract of March 8, 1880, for the rotunda of the new court house, and completion of rear wall thereof :

Balance as per architect's certificate .............. $3,382 30
Damage for delays ............................ 3,600 00

Total.................................... $6,982 30

That the above statements take the place of a declaration, and that defendant shall have the same advantage of defenses as if they should be specially pleaded.

Attached to said specification is the following itemized statement, marked "Exhibit A:"

CARPENTER AND FIRE-PROOF CONTRACT.

Contract price fire-proof work ................. $ 61,403 78
Contract price carpenter work ................. 69,147 50

Total................................... $130,551 28
Credit by cash on original contract............ 126,171 73

Balance due as per architect's certificate...... $ 4,379 55
35 per cent. damage on $60,000 worth of carpenter work, by reason of advance in price of labor and materials after the time limited for the performance of the contract.............. $21,000 00
25 per cent damage on $18,153.78 worth of fireproof work executed after the time limited for the performance of the contract.............. 4,538 45

Total ................................. $29,918 00

Claim on masonry, iron and brick contract:

| | |
|---|---|
| Advance in cost of furnishing and laying 5,955,-790 brick (original contract) after Oct. 1, 1878, at $3 per thousand | $17,865 00 |
| Advance in cost of furnishing and laying 98 2-3 cords of masonry after Oct. 1, 1878, at $6 | 592 00 |
| Advance in cost of 61,000 pounds of rolled iron furnished after March 1, 1879, at 3 cents | 16,830 00 |
| Advance in cost of 59,900 pounds cast iron at 2 cents | 9,188 00 |
| Interest on deferred payments | 4,560 04 |
| Discount on county orders | 25,896 00 |
| Total | $74,331 05 |
| Amount additional on trial | 36,000 00 |
| Total | $110,331 05 |

Claim on rotunda contract:

| | |
|---|---|
| Balance due, as per architect's certificate | $3,382 30 |
| 40 per cent. damage on $9,000 of work done after the time limited for the performance of the contract | 3,600 00 |
| Total | $6,982 30 |

*Trial.*—Verdict as follows:

| | |
|---|---|
| Damage on carpentry and fire-proof contract | $29,918 00 |
| Damage on brick, masonry and iron contract | 81,060 10 |
| Damage on second rotunda contract | 6,982 30 |
| Total | $117,960 40 |

Motion for new trial in said consolidated cases. Motion for new trial overruled. Motion in arrest of judgment overruled. Judgment on verdict.

The building of the several portions of the work of the court house was let, and to several different parties.

The first contract for the building of a portion of the superstructure was made with Wm. McNeil & Son, and was known as the cut-stone contract. It was for the building of the out-

County of Cook v. Sexton.

side course of the walls of the court house, which was to be of cut stone. The inner portion of the wall was to be filled in with brick, which the appellee afterward took the contract to perform, and out of the execution of which a portion of his damages as claimed arise. The contract was dated Aug. 24, 1876, and the work was to be completed on or before the first day of October, A. D. 1878. The contractors, McNeil & Son, whose contract one Walker undertook to perform under power of attorney, provided, among other things, that they were to furnish all the stone, and cut and set the same, together with all necessary and suitable instruments, scaffolding, tools and machinery for the proper execution, hoisting and setting of the work that might be required in and about the erection and construction of the court house according to the plans and specifications prepared for the same by J. J. Eagan, architect, a copy of which specifications were attached and made part of the contract. The stone to be furnished was to be Cook county limestone, and it was further provided as follows, to wit:

And it is further agreed that the first party shall deliver such stone and material, and erect, place and set such cut-stone work, so as to keep pace with the general progress of the building, and shall not cause any delay to other contractors engaged in the erection of said building.

And it is further agreed on the part of said first party that they will not undertake to hold said second party responsible for any damages or delay that may be occasioned by the contractors during the progress of said work or erection of said building.

It is further covenanted and agreed by and between the parties hereto that said second party has the right, and it is hereby reserved to said party of the second part, in case it desire so to do, to construct the columns and pilasters mentioned in said specifications of granite or material other than said limestone, and in case it should elect so to do, it is hereby covenanted and agreed that there shall be deducted from the price herein agreed to be paid the sum of twenty-eight thousand four hundred dollars. All materials of every kind shall

fully answer the sp cifications, or if not particularly specified shall be of the bes quality.

"And it is furt er agreed that if said first party shall refuse or neglect to  oceed according to the terms hereof and in the time and m nner herein stipulated, the said second party shall have he right, and authority is hereby given to declare this co tract forfeited, and to re-let the furnishing of said mater als and performing said labor to other parties; but it is e pressly agreed that such forfeiture shall not release said fir t party or his bondsmen from liability to said second party y reason of failure to perform this contract."

The consideratio i for the work was to be $540,000, and other provisions are as follows, viz.:

"If the contractc shall be ordered to execute any work or make any addition changes or alterations in the works as hereinafter describe l and set forth, and as indicated on the several drawings, pl ns and sections herewith submitted, then it shall be understo d and agreed upon that such changes, additions or alteration , if so ordered, shall not invalidate or impair the contract, b t they shall be paid for as an extra work or deducted from tl e original amount of the contract, as the case may be, such e tras or deductions, if any, shall be subject to the valuatioi of the architect, whose appraisement of them shall be final nd binding upon the parties to the contract, provided such appraisement shall be ratified and approved by the joint ommittee on public buildings and public service."

In the specificatio is it is provided among other things, that the contractors woul l not occasion or be cause of any delay to other contractors en aged in the erection of said building.

The appellee's con act of date of November 23, 1876, for the materials and labor f the masonry, brick and iron work, under which $81,060.1 of the verdict was based, has the same clause in respect to r ot causing delay to other contractors, and in regard to his not l olding the appellant responsible or claiming damages for an delay that might be occasioned by other contractors during t e progress of the work or the erection of

the building, and the one in regard to the changes by the appellant in the work, as was in the contract with McNeil & Son, and these same clauses run through all the contracts mentioned and to be mentioned in the opinion.

The consideration for this agreement was the sum of $328,-163. The entire materials and work required in the brick and masonry work indicated in the plans was to be delivered, executed and completed on or before the first day of October, 1878, and that required in the iron work on or before the first day of March, A. D. 1879. The appellant was, by the contract mentioned in the specifications, to keep pace with the other contractors in and around the building, such as the stone cutter, iron worker, contractor for fire-proof and other contractors, etc.

After making the above contracts the appellant concluded to change the material to be put into the vestibules, arcades and main entrances, four in number, one on each of the sides and ends of the court house, and either by virtue of the provisions of the contract with McNeil & Son or by mutual consent, appellants entered into a new contract on June 4, 1877, with the Hinsdale-Doyle Granite Co., by which the said Granite Company agreed to furnish the material and perform all the labor, cut and set the granite work required for the construction of the vestibules, arcades and main entrances of the court house, thus relieving McNeil & Son from any obligation to do the last named work and substituting the Granite Company in their places, and granite for limestone. The consideration was $149,970 and the contract had in it this provision: " The work herein specified shall be executed so that the work shall commence on the building within sixty days from the date of this contract and shall keep pace with other contractors from the time of this commencement," but no particular time specified when it should be completed except the above last named provision, and the contract had the same clauses for forfeiture in case of failure to perform as the others above named.

Afterward, on June the 30th, A. D. 1879, appellee entered into another contract with appellant to do the carpenter

County of Cook v. Sexton.

and fire-proof w rk on the same court house. The work under this contr ct was to have been completed October 1, 1880. This contr ct had the same general provisions as all the others. The consideration for the fire-proof work was to be $61,403.78 and for the carpenter work $69,147.50.

On February 2{ , 1880, appellee entered into another contract with the app llant to do the masonry and brick and iron work for the rotun la of the new court house, which was substituted for the do ne as originally proposed; the appellee having built the dome under his first contract some 44 feet high, which had to be tor down in order to build up the rotunda. The same general claus s were in this contract as the others. This work was to have een completed by the first day of September, 1830, but was lot done till the winter of 1881. The gap in the wall was 40 eet wide but they had to lap over 55 feet.

Now the damage for which in greater part the appellee recovered judgment i the court below, was claimed to have been caused to him by r ason of his being delayed by the appellant in not performing i s part of the several agreements, and by means of which he ailed to finish any of his contract till the summer of 1881, d ring which time and after the times fixed, in the various agre ments for the completion of the contracts had expired, the pr e of labor and materials had greatly advanced and other g at hinderances, causing him damage, had occurred.

Mr. E. R. Bliss ind Mr. Cyrus Bentley, for appellant; cited Railroad v. F t, 52 N. H. 379; Lintner v. Milliken, 47 Ill. 179; Tracey v. hicago, 24 Ill. 500; Coey v. Lehman, 79 Ill. 173.

No obligation car be implied in a contract which is inconsistent with its exp ess terms: Roebuck v. Dupuey, 2 Ala. 535; Blair v. Hardi , 1 A. K. Marsh, 232; Morris v. Harris, 9 Gill. (Md.) 19; G tes v. Caldwell, 7 Mass. 68; Sumner v. Williams, 8 Id. 20 ; Vanderkarr v.Vanderkarr, 11 Johns. 122; Kent v. Welcl , 7 Id. 158; Crouch v. Fowle, 9 N. H. 219.

County of Cook v. Sexton.

Messrs. Swett, Haskell & Grosscup, for appellee; as to measure of damages where a contract being broken by one party, the breach thereof is assented to by the other party, cited Butts v. Huntley, 1 Scam. 410; Herrington v. Hubbard, 1 Scam. 569; Reed v. Phillips, 4 Scam. 39; Bannister v. Reed, 1 Gilm. 92; Clarke v. Greene, 4 Pick. 114; Gillet v. Maynard, 5 John. 87; Richards v. Allen, 17 Me. 299; Weaver v. Bentley, 1 Caines, 47; Dearborn v. Cross, 7 Cowen, 48; Reed v. Phillips, 4 Scam. 50; Longworth v. Taylor, 1 McLean, 405; Chitty on Contracts, 249; Lemingdale v. Livingston, 10 Johns. 36; Dubois v. D. & H. Canal Co., 4 Wendell, 290; Britton v. Turner, 6 N. H. 481.

Lacey, J. The defense set up to the right of recovery of the appellee is that the causes of delay was in great part due to the fault of the other contractors and not by appellant, and that as to damages arising from such causes he had, in all his contracts with it, stipulated that he would not claim them.

It is claimed that upon this point the court improperly instructed the jury on the part of the appellee, and erroneously refused to properly instruct on the part of appellant. It is further claimed that the verdict is against the weight of the evidence, in that the jury gave to appellee, by their verdict, all the damages accruing to him according to his claim on account of delays occasioned by whatever cause, while it was clear that appellant was not responsible for a large part of the delay if any; that the court below also by instruction given to the jury on its own motion, left it to them to construe the meaning of the contracts which the court should have done itself. In order to arrive at a proper understanding of the questions and points involved it will be necessary to examine the amount of damages claimed by appellee in each of the contracts and the cause thereof and the evidence bearing thereon somewhat in detail. And first we will consider the question involved under the contract for the masonry, iron and brick work, dated Nov. 28, 1876. The appellee claims damages thereunder for delays caused as he alleges by the appellant, for each of the years 1877, 1878, 1879, 1880, 1881. But

before proceeding to consider the question we will state what we hold the law to be bearing upon the question of damages as well as on the liability of the appellant for the several delays.

The questions here raised are whether appellee, under all the circumstances, is entitled to retain the contract, so far as it can be traced, and recover the damages for increased expense in doing the work after the time for the completion of the contract had expired, in addition to the contract price, or whether he can abandon the contract entirely and recover for the reasonable value of all the labor and materials expended in the completion of the work, the county having received the benefit thereof, or whether having finished the work after the alleged breaches he could claim more compensation than the contract price.

After a careful investigation of the law and the facts in the case we have concluded to hold that the just and proper rule would be to allow the appellee to retain the contract, so far as it can be traced, and to recover the contract price, and in addition such damages or increased compensation, after the time for the completion of the contract had expired, as he can show was the proximate result of any breach of the contract express or implied, by the county, and that in favor of the latter all the provisions of the several contracts should remain in force until their final completion by appellee, except as to the time of fulfillment and the compensation, where affected by breaches by the county.

The law bearing on the question is not free from doubt, but we think the rule, as announced, is sustained by the authorities cited by appellee's counsel, and it commends itself to us as being just and equitable. Alleman v. The Mayor, etc., of Albany, 48 Barb. 34; Dubois v. Delaware and Hudson Canal Co., 4 Wend. 285; Koon v. Graham, 7 Wend. 123; The Delaware and Hudson Canal Co.v. Dubois,15 Wend. 87; Dermott v. Jones, 2 Wall. 1; Lincoln v. Schwartz et. al., 70 Ill. 134. In support of the negative of the last proposition, the appellant's counsel in his brief makes the point, but it is not argued or referred to afterward, that the appellee having completed the con-

County of Cook v. Sexton.

tracts after the time had expired, affirmed it and could not disaffirm it and bring his action for alleged breach, and cites W. U. R. R. Co. v. Smith, 75 Ill. 496, as authority. In that case the railroad company had agreed to furnish iron, and Smith had agreed to lay the railroad track, before the ground froze in the winter. The railroad company failed to do this, but furnished it after the ground froze, and Smith, without making any complaint of the failure to furnish it before, went on and laid the track at a greatly increased cost, which he sought to recover; but the court in passing on the claim said, that as he had finished the work without any further agreement or understanding, the reasonable presumption would be that he was intending to perform the labor under the agreement.

But in this case it will be observed that the appellee frequently notified appellant that he would not do the work, when delay was caused by it, for the same price stipulated under the contract, but would claim all the "damages" caused by the several delays. He did not notify it that he would abandon the contract and sue for the reasonable value of the work and labor, but would claim "damages" for the delays. If he had abandoned the contract entirely they could have paid him for what he had done up to that time and discharged him, but from his notices they could not so understand it, but that he claimed the benefit of the contracts. Nor do we understand from the appellant's briefs that it seriously contests the right of appellee to recover damages arising after the breach of the contracts, if any, caused by delay for which it was responsible. Its main argument and contention is that the delays were caused by other contractors, damages for which appellee had agreed to make no claim against it.

We do not think, under the circumstances, that appellee would have the right to recover entirely for the reasonable value of the work without reference to the contracts, if this would be more than the contracts called for. The contract can not be regarded as wholly abrogated.

To return again to appellee's claim for damages under the contract of date November 23, 1876.

The appellee testifies that the damages accruing to him by reason of all delays on the contract mentioned, spread over the entire time, was three dollars per thousand on 17,000,000 brick laid, amounting to the sum of $52,500, and his damages on the iron was $30,000, and his damages for interest and discount was $30,000, making in the total $112,500. The jury, of this account, allowed him $81,060.10, rejecting the $30,0. 0 for discount on county orders and interest, being nearly the entire claim. What were the specific causes of these damages and for what portion was the appellant responsible? It will not be necessary to recite the substance of all the evidence, but enough of it only to show what the evidence tended to prove as to who was responsible for the various delays caused to appellee and how they affected him. We will mostly recite from appellee's testimony, supposing he understands his own case best. His specifications of the causes of delays and damages are these: In the year 1877 he was ordered to begin laying the brick, March 1, 1877, but actually began about the middle of April. The first cause of delay was changes in the cut-stone contract between the appellants and McNeil & Son, or Walker, requiring thick stone to be laid in the outer wall instead of thin, as the contract first required. The stoppage on this account was not very great—less than thirty days, but after that the stones came very slowly—they began to come about June, 1877. The next cause was the granite contract made with the Hinsdale Granite Company, which delayed the work at the four entrances of the court house. By this contract the Granite Company was to commence work within sixty days from the date of the contract, and should keep pace with the other contractors from the time of that commencement. The date of the contract was June 4, 1877. There was no evidence that it was not within the power of the Granite Company to comply with the contract that was made. A delay in the work on the entrances of only sixty days could be charged against appellant, and how much such a delay would have impeded the progress of appellee's work there is no evidence to show. Any delays after sixty days had expired, it would seem, should have been charged to the Granite Com-

pany and not to appellant, and also any other inconveniences that the appellee was put to on account of the operation of the Granite Company, should not be charged to the county. The appellee states in his cross-examination " that the substantial delay was due to the slowness with which the cut-stone contractor set the stone. With proper apparatus and with the granite on the ground, the Granite Company could have pr. - gressed with their work in such a way as to have caused no delay." Surely as against delays caused by the Granite Company and the cut-stone contractor, which the county was not responsible for, there could, under the contract with the appellee, be no claim for damages against appellant.

Now in the year 1877 the appellee laid 8,750,000 brick and 1,140,000 pounds of iron. Upon this material on account of the irregular way appellee claims he had to do this work and on account of the delays caused as stated, he lost $3 per thousand on the brick and one half cent per pound on the iron, making a loss of $32,250. Then the granite derricks were laid in the passage way which caused him inconvenience to deliver the brick—this cost him 60 cents per thousand—amounting to $5,250. One other cause was the failure on the part of the county to provide for construction of dome to fill in the west wall of the building. The amount of damages this was to appellee is not stated. The damage in being unable to use his organized force was put at $9,000.

Appellee claims that appellant was chargeable for all these delays. But it appears to us that it was chargeable in a very slight degree if at all. The clause in the contract relieving the county against damages caused by delays occasioned by other contractors applies to contracts made after the one signed by appellee as well as before, and so with all others, and the county would have the right to change contracts and make as many as it pleased, and this clause would hold good as to all of them if the change did not put it out of the power of the new contractor or contractors to fulfill the contract the same as it could have been fulfilled before the change— that is, not to delay appellee. If it was within the power of the new contractor, in accordance with the terms of his

contract to not delay appellee, and he failed from some cause to keep his contract, appellant would not be responsible for such failure.

This would seem to very nearly dispose of $46,500 of the $81,000 allowed by the jury, if indeed such a class of damage is allowable at all, which question we will consider hereafter.

The balance of this $81,000 was lost to appellee during the years 1878, 1879, 1880 and 1881, which question we will proceed to consider and the causes of it and the responsibility of appellant therefor.

It appears from appellee's evidence that save for the hinderances and delays of the year 1877 he would have put in one third more of the work and would have saved any further loss on it—but in this hinderance the county, as in case of the above loss, was not largely responsible. We will not consider the discount on the county orders, as that claim was properly rejected by the jury.

In the year 1878, the year in which the appellee's contract for doing the brick and masonry work expired, there was more delay than in 1877, and he attributes it to the failure of Walker, the cut-stone contractor, not finishing up the cut-stone work, and that for this reason he had to suspend work about the last of May, and the county did not cash orders until in October, 1878; but appellee was not delayed in the work on that account. There is a claim for damages on account of the cut-stone contractor not keeping the walls up level, building them zig-zag up and down, how much he does not state, but some of the witnesses put it very high, and this was caused to some extent because the granite work was not kept up even pace with the cut-stone, and for another and the greater reason that the cut-stone contractor failed to use proper derricks which caused him to build his part of the wall as he did. For this cause of delay and damages the appellant was not responsible. Another cause of delay and expense to appellee was the introduction of bond stone in the building; some bond stone was provided for in this contract, but the cut-stone contract was changed so that the wall in certain other places had

County of Cook v. Sexton.

to be bound with a layer of bond stone clear across the wall, that portion being put in place by appellee as well as the other, and was put across every few feet. The cause of delay was the waiting on the cut-stone c ntractor to set the bond stone after the wall was leveled up by appellee. This caused very much delay. For this delay the appellant was not responsible unless by the terms of the changed contract it was put out of the power of the cut-stone contractor to avoid delay. If it could not be done, then the county was at fault for making the change, otherwise not. On Oct. 1, 1878, one half the brick work was done—could not do the rest because the cut-stone was not set. From the last of May till fall very little was done. It is true that Walker, the cut-stone contractor, states that his delay in 1873 was caused because the county treasurer failed to cash his orders which he received for the work, and that he did just as little work as possible, on that account. If this be so the county would be fairly responsible for this delay. But after October, 1878, there was no lack of money and no cause of delay as to Walker, except he claims that he was delayed on account of the discussion as to taking off the upper story had by the building committee in 1879, which was about one month, and this was in the fore part of the year, which did not interrupt the work of any consequence, and after that there was no delay caused by the county. The appellee commenced work in the spring of 1879, and we can see no reason why his entire work should not have been completed in that year, for it was at least one half done with the exception perhaps of a small portion in fitting up around the rotunda wall which was not yet completed, and also a portion of the iron work could not have been fitted on that account. But it does not appear that the balance of the work was done or that the want of that wall was very much felt, but all of the work except that around the rotunda might have been completed. In 1879, the appellee testifies that the work went on very slowly on account of the irregularity of setting the stone. The cut-stone contractor charges his failure to do the work faster to the granite contractor, whom he blames for his delay; the records fail to disclose, but whether the delay was

caused by one or both of these contractors, the appellee could have no claim for damages, and if but for delays caused in this way the latter could have completed the most of the work in 1879, he could in no event recover from appellant for any increased price of doing work in 1880 and 1881 that might have been done in 1879 but for other contractors' delays, and it seems that there was a continual advance in prices for labor and material, commencing in 1879 and continuing till 1880 and 1881.

The terms of appellee's contract and good faith to the county would compel him to finish the work even after the time for completion fixed in the contract had expired; as speedily as possible, and as the appellee chose to hold on to the contract, and only claim damages for delays caused by the county, that portion of the contract absolving the appellant from the payment of damages for delays caused by other contractors would remain in force to the end.

Not much more need be said as to the other two contracts, one for the carpenter and fire-proof work, and the other for the rotunda, as the same rules would apply to these two contracts as does to the one that we have been discussing.

The carpenter work was delayed because the roof was not on the building in time, and the roof was not on because the walls were not up, and they were not up because appellee was delayed by the cut stone and granite contractors, and the fire-proof work was not done because the carpenter work was not done; so that it is seen that, by a chain of facts, the responsibility for delay is traced back to the cut-stone and granite contractors, as shown in the forepart of this opinion. The want of the building of the rotunda was another cause of delay assigned. But by the appellant's contract for the fire-proof and carpenter work, the latter was to have been completed by the first day of October, A. D. 1880, and he himself had the building of the rotunda, which contract was dated February 23, 1880, and which was to be completed by the first day of September, 1880, a period of time prior to that when the carpenter and fire-proof work was to be finished. So if that was not out of the way, he was at fault himself because he had no

cut stone, and he had no cut stone because Walker, another contractor, did not furnish it in time. So, if this be the case, the appellant would not be responsible for the delay in the rotunda contract. Under the state of facts in the case the instruction became important, and it is equally important that the law be correctly laid down to the jury.

The appellee's first given instruction is complained of for the reason that the jury are plainly told, after reciting the appellee's contract with appellant for the masonry, iron and brick work and the relation it bore to McNeil & Sons' contract and others, that "there was an implied obligation in said contract on behalf of defendant, that it would have the court house in such condition as to render it possible for the plaintiff to do his work within the time stipulated in his contract; and if the jury further believe from the evidence that said defendant did not have said building in a condition that it was possible for said plaintiff to do said work within the time stipulated for its being done, by reason of the default of the county of Cook" etc., etc., the appellee would be entitled to recover such additional sums (above the contract price) as the work has cost him by reason of the increase of price of labor and material and inconvenience under which the work was done, etc.

It will be seen that this instruction wholly ignores the clause in all appellee's contracts that appellant should not be responsible for damages caused by delays occasioned by other contractors. The county would not be compelled, at the penalty of forfeiting their contracts with appellee and rendering itself liable to him for damages, to compel the other contractors to perform their contract so as not to cause appellee any delay; if that were so such a clause in the contract would be useless, and might as well be left out altogether. It certainly had some purpose; nor do we conceive that the county, for the benefit of appellee, was bound to declare its contract with any contractor forfeited for the reason that such contractor was violating its contract with it by causing delay to appellee. This was a matter that was and should be left to the sound discretion of the county, the same as though no contract had been made with appellee. There should be no combination

between appellant and any contractor to cause delay to appellee; but they were under no obligation to forfeit such contract for the appellee's benefit. Therefore, the instruction was erroneous and should not have been given. That part of the instruction that told the jury that the appellee could recover the increased expense of doing the work in '79, '80 and '81 should have been qualified in accordance with this opinion. In case the work or any portion of it could have been accomplished by reasonable diligence by appellee within the year 1879 unless prevented by some fault of the county, then such increased expense for the portion of the work that could have been so completed after that time could not be recovered from appellant. It is also claimed by the appellant that the court erred in refusing refused instructions Nos. 20, 22 and 23, which in substance tells the jury that appellee can not recover for any delay occasioned by any other contractor or contractors in the prosecution of his work under said contract, and that it makes no difference whether such delays, if any, occasioned by other contractors, were ordinary or extraordinary. These instructions should have been given, and the appellee's first instruction refused or modified. The instruction given on the court's own motion, to the effect that the jury should construe the meaning of the contract, was erroneous. The proper construction to be given to it belonged to the court and not to the jury, and the jury should not have been sent off into the field of speculation in that manner. Ogden v. Kirby, 79 Ill. 555; Canterberry v. Miller, 76 Ill. 355.

We wish to discuss somewhat the right of the appellee to recover certain damages claimed by him of appellant, on account of delays alleged to have been caused by it in the execution of the several contracts.

The nature of the damages claimed to have accrued under the first contract have been set out above and are, first, increased expense in laying the brick in 1877; second, increased expense in laying the iron in the same year; third, increased expense in delivering the brick on account of the granite contractor's derricks being put in the passage way, which were in appellee's way in delivering the brick; fourth, failure

County of Cook v. Sexton.

to provide for the construction of the rotunda and filling in the gap in the west wall of the court house, the amount not named for this failure; fifth, damages in being unable to use his organized force. The damages claimed for the year 1878, while the contract was in force, are of the same general nature. The damage after that year is the increased cost of the work on account of the increased price of labor and material, and because some of the work had to be done in the winter—a more expensive season. The first class of damages, or those charged for 1877 and 1878, arises on the assumption that there was a breach by appellant of what is claimed by the appellee's counsel to be an implied "obligation on its part that it would have the court house in such a condition as to render it possible for the appellee to do his work in the time stipulated in his contract."

We understand that unless appellant itself caused delay in the execution of one of the contracts, to such an extent as to prevent the completion of it within the time agreed upon with appellee, then there would be no such breach of the contract as would authorize its abandonment entirely by the latter and give him the right to sue for the reasonable value of the work and labor done without reference to the contract. Although there might have been some delays caused appellee by the failure of appellant to have everything in readiness to allow him to do all the work in 1877 that he wanted to do in that year, and as fast as he wanted to do it, yet there was no breach of the contract, as the appellant had not agreed to prepare the court house work and have everything ready to have the brick and iron work completed in 1877, but if it gave facilities so that the appellee could complete it in 1878 it filled its contract. In the year 1878 there was plenty of time left for the appellee to have completed the work if everything had been in readiness in that year. Hence, in 1877 there was no time in which a forfeiture could have been rightfully declared by the appellee, and during that year a large amount of damages is claimed on the increased price of putting in the masonry and iron that was put in during that year, and for not being able to use his organized force; and the same claim for damages might continue until it

was put out of his power by acts of omission or commission of appellant to finish the work within the contract time. Hence the damages had accrued before there could have been a forfeiture. Then it follows that no increased price for doing the work could be charged till the time when the contract for doing the iron and brick work expired, unless the entire contract should be considered abandoned and this suit be regarded based on a *quantum meruit*, without reference to the terms of the contract which we have said we do not regard as the proper basis. But even in that case no element of recovery, such as is claimed in this cause, could be allowed. It would then be what it was reasonably worth to do the work; *i. e.*, what it could have been done for generally, without reference to damages resulting from failure to use appellee's organized force and other like damages. Again, as long as the contract is to be regarded as the measure of damages for what portion of the work had been done prior to the time of its expiration, we do not think damages above the contract price, such as is claimed, should be allowed for delays.

It is laid down in two of the cases cited by appellee's counsel—Delaware and Hudson Canal Co. v. Dubois, 15 Wend. 87, and Dermott v. Jones, 2 Wall. 1—that where the contract was rescinded by the acts of omission of the contractee, so as to authorize the plaintiff to recover on the common counts upon a *quantum meruit*, that in ascertaining the amount to which the plaintiff was justly entitled for his services, the price was fixed upon by themselves by the rescinded contract, and that it should conclude the parties so far as the work had been done in the manner and within the time prescribed in the contract; and in the Dermott-Jones case, it is laid down as a rule that the contractor "must produce the contract upon trial, and it will be applied as far as it can be traced, but if, by the fault of the defendant, the cost of the work or materials has been increased, in so far the jury will be warranted in departing from the contract price." There is great conflict of authorities upon this subject. But the court regard the rule as "reasonable and just and sustained by a preponderance of the best considered adjudications." If

appellant failed to allow the appellee to finish the work in the time allowed by the contract, then from the time of such fa'lure alone could increased compensation be allowed. Another rule of law is laid down by the law writers in some of the text books, that is, " In cases where, in progress of particular work, periodical measurements or inspections are provided for, and made for the purpose of partial payments, the sums thus ascertained to be payable are the measure of the compensation to be recovered for the work so measured or inspected; if the employer afterward breaks the contract by stoping the work and the reserved payments have not been paid," they immediately become due. 2 Sutherland on Damages, page 521. " He (the contractor) is also concluded by these statements and by reason of their being closed as distinct and separate portions of the contract; and he can not open them again to prove and recover the actual value of the work. But so far as other work has been performed which remains unadjusted between the parties, the contractor is at large on his *quantum meruit,* and at liberty to prove the actual value" etc., etc. Ibid, page 522. It seems that such a provision was in these contracts and estimates and payments made under estimates established by the architect before the contracts were forfeited, if they were forfeited by appellant's fault, at least as to some of the contracts.

It will be a question for the jury under all the evidence in the case, to determine whether the time for the execution of the brick and iron contracts was extended by mutual consent of both parties, even if the county was in default. Of course the west wall that was to be filled by the rotunda east wall, was not complete and for that reason the contract could not be finished within the time, October 1, 1878. The contract for doing the rotunda work was not even let; but whether, if it had been seen that the other work, the cut-stone and granite work, had been in a sufficient state of forwardness to allow of the completion of the brick and iron contract by the stipulated time, the rotunda work would not have been done by appellant in sufficient time to allow appellee to complete his contract, is also a question for the jury, as well as all other facts

and circumstances as bearing on the question of the intention of the parties; that is, whether or not the primary cause of failure to allow appellee to do his work within the stipulated time was not the backwardness of the cut-stone and granite work; for if they had been in such a state of backwardness as to prevent the completion of the work within the time, even with the rotunda completed, the completion of the rotunda would have failed entirely to allow appellee to do his work in time; and it would have been useless for the county to have done that work for the mere purpose of allowing the appellee to complete his work within the contract.   Also it is a question, whether the cut-stone work was not delayed by fault of the county not furnishing money to pay for it according to contract. · Also the communication of appellee of October 10, 1876, wanting directions what to do, thus claiming the right impliedly of still finishing the work, even if the time had expired.   If the time of the completion of the contract with appellee for the brick and iron work was extended by mutual consent, then the appellee would have the right to recover on a *quantum meruit* for the increased price of the work done after that time, he having the right to hold his contract in force so that if there were any profits in it, he could enjoy them by charging the increased costs to the county; but he should not be allowed to charge speculative damages for hinderances and delays.   2 Sutherland on Damages, page 508, and authorities in note 1.   But the appellee, if the contract remained in force, except as to time of completion and price, should be governed by it and should do the work as speedily as possible and should be bound by the provisions in the contract not to claim damages for delays caused by other contractors.   But we think appellee should not be allowed to repudiate the contract entirely.   The appellee at no time notified the county that he would not do the work under the contract, but only that he would expect damages for delays, that is, such damages as the law would allow him in case the time of completion as fixed by the contract was extended.   If he went ahead with the work, as did Smith, reported in 75 Ill. 496, and completed the work after the default of appellant, if there

was any, without making any complaint, then it would be presumed that he did the work for the prices named in the contract. Smith was refused the right to recover $900, his extra expense, on this theory.

But we think it would not be just, under all circumstances in this case, to hold so rigid a rule against the appellee. The same rules would be applied to the other contracts so far as the facts justify. If the jury should find that the county has not been in fault and did not prevent the finishing of any of the contracts in time and the fault lies at the door of the other contractors, then appellee, as to such contract, could only recover the contract price, for such we understand to be the meaning of the contract.

All instructions should conform to the rules laid down in this opinion.

The judgment reversed and cause remanded.

Reversed and remanded.