J. F. EDWARDS CONSTRUCTION Co., Plaintiff-Appellee, *v.* THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellant.

(No. 74-134;

Third District—December 31, 1975.

*Rehearing denied February 9, 1976.*

STOUDER, J., dissenting.

William J. Scott, Attorney General, of Chicago, (Walker K. Pyle, Assistant Attorney General, of counsel), for appellant.

Spector, Taber & Tappa, of Rock Island (Herbert M. Spector, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Plaintiff-contractor and defendant-project owner were parties to a written agreement, dated May 5, 1972, wherein plaintiff undertook to construct lighting improvements along defendant's east-west tollway then under construction by other contractors. The amended complaint, with a portion of the contract attached as an exhibit, was filed in two counts. Count I sought a declaratory judgment that plaintiff is entitled to a reasonable extension of time for completion of the contract work; count II sought payment for additional costs incurred in executing the contract work. Plaintiff's right of relief under both counts was alleged to derive from delays occasioned by defendant's breach of an implied duty to have prepared construction sites available to plaintiff on or before the starting date of plaintiff's contract on May 8, 1972, or within a reasonable time thereafter. Both counts alleged that defendant failed in this duty by "negligently scheduling" the necessary preliminary work of other contractors (i.e., for earthwork and grading) so that they would have "the same completion date [i.e., October 1, 1972] as that specified for the completion of the work undertaken by plaintiff." This "negligent sched-

uling" was characterized in the pleading as "active interference" by defendant which made the work sites unavailable to plaintiff within the time scheduled by the contract for its performance and occasioned delays which increased plaintiff's costs, and therefore entitled plaintiff to a reasonable extension of time. Both counts were dismissed on defendant's motion supported by affidavits furnishing contract specifications (by Judge Rink); the circuit court held that the implied duty pleaded in the amended complaint was a conclusion of the pleader negated by the express language of the agreement sued upon. Plaintiff was given leave to file an amendment by adding count III. Thereafter, a default was entered against defendant for failure to respond to count III within the time ordered. Defendant's motion to vacate the default was denied and the cause proceeded to trial before a different judge, without a jury, under count III for the value of items of "extra work" allegedly furnished under the contract. Defendant appeals from an adverse judgment under count III in the amount of $149,661.93; plaintiff cross appeals from the order dismissing counts I and II.

■■■ We consider first, the propriety of the order dismissing counts I and II of the amended complaint. There is substantial authority to support the view that one who contracts to provide labor and materials for a construction project with the reasonable expectation that it will be done within a particular period, and who is thereafter delayed through no fault of his own, but by virtue of the act of the other contracting party, will be entitled to recover for any consequential damages. (Annot. 16 A.L.R.3d 1252 (1967).) But potential loss from delay is inherent in any construction project (*McDaniel v. Ashton-Mardian Co.*, 357 F.2d 511, 517, 16 A.L.R.3d 1243 (9th Cir. 1966)), particularly one involving co-ordinated efforts of multiple contractors. And if from the express provisions of the particular contract, it is apparent that the delay complained of was fully anticipated and provided for, and the right of recovery is expressly limited or precluded (*Herlihy Mid-Continent Co. v. Sanitary District*, 390 Ill. 160, 60 N.E.2d 882 (1945); *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E.2d 361 (1937); *Ryan Co. v. Sanitary District*, 317 Ill.App. 549, 47 N.E.2d 576, *aff'd*, 390 Ill. 173, 60 N.E.2d 889 (1945); *County of Cook v. Sexton*, 16 Ill.App. 93 (1884), *aff'd*, 114 Ill. 174, 28 N.E. 608 (1885); see Annot., 91 L.Ed. 48-80 (1946)), or if it is apparent from all the provisions of the agreement that it provides no reasonable basis for the expectation on the part of a complainant that the work could be done by a fixed period (*H. E. Crook Co. v. United States*, 270 U.S. 4, 70 L.Ed 438, 46 S.Ct. 184 (1926); *United States v. Rice*, 317 U.S. 61, 87 L.Ed. 53 (1942); *United States v. Howard P. Foley*

*Co.,* 329 U.S. 64, 91 L.Ed. 44, 67 S.Ct. 154 (1946)), then these provisions will control. At Restatement of Contracts § 315 (1932), the principle is given:

"(1) Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract, unless

(a) *    *    *

(b) *the terms of the contract are such that the risk of such prevention or hindrance as occurs has been assumed by the other party.*" (Emphasis added.)

In *Crook* plaintiff-contractor undertook with the government to install heating systems in a foundry building and in a machine shop, both of which were then under construction by different governmental contractors. The facts alleged in the case at bar are similar. In *Crook,* the completion date specified in plaintiff's contract was March 19, 1918; the completion dates in the preliminary construction contracts for the foundry building and the machine shop were March 17, 1918, and February 18, 1918, respectively. In the case at bar, plaintiff's completion date is alleged to have been October 1, 1972, and that of the preliminary work contractors about the same. In *Crook,* the building contractors fell behind schedule by nearly a year causing delays to plaintiff and additional costs for which suit was brought against the government. There was no suggestion in *Crook* that the contract had any express provision exonerating the government from losses occasioned by its own delays. There is no such provision in the contract in the case at bar. Nonetheless, in denying recovery to plaintiff in *Crook,* and in finding that the contract imposed *no duty* upon the government to have the contemplated structure ready for plaintiff's work by any fixed time, Mr. Justice Holmes concluded from all its provisions, that the agreement made it clear that *the parties contemplated from the beginning that the time fixed for plaintiff's performance was provisional.* It is appropriate to observe that where there exists *no duty* to have the contemplated site ready by a fixed time, there exists no occasion for a clause exonerating the project owner from damages for its delays in that respect.

The agreement in *Crook,* like the one here, anticipated that plaintiff's progress would depend upon and be affected by the progress of the other contractor's preliminary work. The agreement there like the one here stated that the government had the right to make changes in the plans and to interrupt the continuity of the work. The fact that the completion dates for the work of building contractors in the *Crook* case were the same, or nearly the same as that specified for the complainant, as is

alleged in this case, was not held an incident of faulty or actionable scheduling by defendant, or a breach of any duty owed the plaintiff, but notice to plaintiff at the outset that the government had *no duty* to make the sites available by a fixed time and that should these other contractors fall "behindhand" for any reason, even because of changes made by the government, plaintiff must also necessarily be delayed. It was for all these contingencies, anticipated at the outset, said Mr. Justice Holmes, that plaintiff accepted the contract price in full satisfaction, with no remedy except, in a just case, for a right to an extension of time.

The validity of the reasoning in *Crook* has since been reexamined and reaffirmed by the Supreme Court in *United States v. Rice*, 317 U.S. 61, 87 L.Ed 53 (1942), and was adhered to by the Court of Claims in *Gilbane Building Co. v. United States*, 333 F.2d 867 (Ct.Cl. 1964). The case of *United States v. Howard P. Foley Co., Inc.*, 329 U.S. 64, 91 L.Ed 44, 67 S.Ct. 154 (1946), following the same precedent, involved a factual circumstance similar to that alleged by plaintiff here. In that case the complainant was an electrical contractor who had a contract with the government to install a lighting system at the National Airport, then under construction by other governmental contractors. The exact time specified for complainant's performance was 120 days after notice to proceed. The preliminary work of earthwork contractors took longer than the government had anticipated, in consequence of which complainant's project required 277 days for completion. Notwithstanding the obligation of complainant to complete within 120 days, Mr. Justice Black stated that this undertaking on the part of the contractor could not be converted into a promise on the part of the government that it would make the project site available at any particular time where other provisions clearly indicate that delays were to be anticipated at the outset and provided therefor.

The provisions of the contract in the case at bar are parallel to those examined in *Crook* and *Rice* and *Foley*, and provided as well that plaintiff was chargeable at the outset with all that was observable from inspection of site conditions, including in respect to the status of the work and progress of other preliminary contractors; that the progress of plaintiff's work, notwithstanding the dates specified for performance, was also to be controlled from the outset by defendant's engineer; and that delays occasioned to plaintiff whether by the work or progress of other preliminary contractors, or by the elements, or by any changes in the work or revision in progress schedules made by defendant, or by suspensions or discontinuances ordered by defendant, would not be cause for claims for additional costs. Moreover, the agreement here provided that the contract price shall be

"full payment for the work, including but not limited to, furnishing all materials, transportation, labor, tools and equipment for performing all work contemplated and embraced under the contract; for all loss or damage arising out of the nature of the work or from the action of elements; for any unforeseen difficulties or obstructions which may arise or be encountered during the progress of the work until its final acceptance * * *; for all risks of every description in connection with the prosecution of the work; also for all expenses incurred by or in consequence of suspension or discontinuance * * *."

The time fixed for plaintiff's performance was, at the outset, clearly provisional and for the benefit of defendant only. There were not only provisions for delays and revisions of schedules, but defendant also had the right to require plaintiff to provide additional crews and to work additional shifts and hours, all without added costs, if in its judgment that should become necessary to meet the target date of October 1, 1972, designated for the opening of the tollway, or to meet revised progress schedules. It is the presence of all these foregoing provisions which, in our judgment, distinguishes the contract in the case at bar from the contract considered in *Consumers Construction Co. v. County of Cook*, 1 Ill.App.3d 1087, 275 N.E.2d 696 (1st Dist. 1971). In that case, considering all the covenants of the agreement, time for the contractor's performance was not provisional in any sense but was expressly made "of the essence" of the agreement. The time allotted there for the contractor was not merely for the benefit of contractee, but provided basis for the reasonable expectation on the part of contractor that its work could be performed within such period, and in the circumstance of delays arising without its fault, defined also the time when there arose on its behalf an option of terminating the contract work. In the contract here, which expressly contemplated the possibility of delays and provided for them at the outset, the incident of such delays can not be deemed occasions for the contractor having an option to terminate the contract work.

In our judgment, the other cases cited by plaintiff are also not in point. In *Tobey v. Price*, 75 Ill. 645 (1874), *Taylor v. Renn*, 79 Ill. 181 (1875), and *J. J. Brown Co. v. J. L. Simmons Co.*, 2 Ill.App.2d 132, 118 N.E.2d 781 (1st Dist. 1954), the contractees *expressly* undertook some duty which was necessarily preliminary to the contractors' performances, and there were no provisions in the agreements giving contractors notice at the outset that delays should be expected and that the contract price was to be in full satisfaction for all such contingencies. In *Tobey v. Price*, the contract specified, to the contrary, that owner would provide iron work and cut stone which was essential for the contractor's masonry work, and

that owner would be liable for neglect or omission of that duty in which he defaulted. In *Nelson v. Pickwick Associated Co.*, 30 Ill.App. 333 (1889), and *W. H. Stubbings Co. v. World's Columbian Exposition Co.*, 110 Ill.App. 210 (1903), the express provisions of the contract, considered as a whole, did not negate the presence of an implied duty on the part of the contractees to have the construction sites available; the question presented for determination in those cases was whether provisions allowing for extensions of time for contractors' performances in event of delays should be construed as meaning to deny contractors the right also to be compensated for the extra costs. A similar question was raised in *J. J. Brown Co. v. J. L. Simmons*, where the contractee expressly undertook the preliminary duty of providing temporary heating for complainant's plastering work. It was decided in that case that provisions for extensions of time to the contractor in the event of delays, and conferring upon contractee the right to control the progress of the work "so as not to delay construction," do not indicate an intention to preclude the contractor from a right to recover compensation for the added costs deriving from delays occasioned by contractee. In *John P. Brady & Co. v. Board of Education*, 222 App.Div. 504, 226 N.Y.S. 707 (1928), and cases of similar import cited by plaintiff, the question presented was whether under the circumstance of a contract imposing an express or implied duty upon the part of the owner or contractee to perform some duty preliminary to a complainant's performance, a clause explicitly exonerating such owner or contractee from damages caused by delay in executing his obligation was enforcible. While such exculpatory clauses are usually deemed valid (see Annot., 10 A.L.R.2d 801 (1950)), they are also sometimes strictly construed, as in *John P. Brady Co.*, so as to preclude an unconscionable result that could not reasonably have been intended under the particular language of a contract.

We think the rules of these cases are inapplicable here, however. Our concern is not to isolate and interpret the meaning and effect of an "exculpatory provision," to see if a delay in the performance of an *established duty* falls within its terms. As noted earlier, there is no clause in the contract here which purports to exonerate defendant from liability for its own delays, but the absence of such a clause is compatible with the conclusion that the contract itself imposes *no duty* upon defendant to provide prepared construction sites within any fixed time for which it could be liable on default. While there does exist an exculpatory clause in respect to delays occasioned by other contractors, it is also clear here that the contract, unlike those in the cases cited by plaintiff, expressly provides that such delays, while providing basis for an extension of time in a just case, will not provide a basis for extra costs. The enforcibility

of this exculpatory provision, or its reasonableness, is not involved in this cause, however, since the delays complained of in the amended complaint are delays of defendant in executing an implied duty to have sites available by a fixed time, and not delays of other contractors to which the exculpatory clause purports to apply.

Neither are we called upon in this case to decide whether the provisions of the particular contract, in respect to extensions of time, mean to deny plaintiff the right also to be compensated for extra costs arising from defendant's delay in the execution of a *given* duty. The issue here is the more basic and underlying one of determining whether defendant *ever had the duty at all* upon which plaintiff relies, and the breach of which could give rise to an occasion of damages for delay in the absence of an enforcible exculpatory provision or one purporting to provide the sole remedy of extended time for performance. On that question, the principles applied in *Crook* and the cases following it conform to those applicable under Illinois law.

■■ Considering all of the provisions of the contract here, and isolating none from context (*Illinois Education Association Local Community High School District 218 v. Board of Education*, 23 Ill.App.3d 649, 320 N.E.2d 240 (1st Dist. 1974)), we are persuaded that the circuit court correctly determined that its express covenants are not compatible with the existence of the implied duty pleaded in counts I and II of the amended complaint and that they negate its presence.

■■ In respect to plaintiff's cause for an extension of time, the specifications of the contract at section 105.14 also contemplate that contractor should give owner notice in writing "of his intention to make request for such extension  *  *  *  before he begins that portion of The Work  *  *  *" for which the extension is requested, and then recites that the request will be considered "upon satisfactory completion of the contract" and will be allowed "if and to the extent the  *  *  *  [owner]  *  *  *  finds it to be just  *  *  *." Plaintiff's complaint does not allege compliance with the requirements of this paragraph, or that its request pursuant to such procedure has been denied. No argument has been made that the requirements of this paragraph are inapplicable or excused, or that allegations of compliance with all conditions precedent are not required, as would seem to be the case under Supreme Court Rule 133 (Ill. Rev. Stat. 1973, ch. 110, § 133(c)). Accordingly, we find no error in the order dismissing counts I and II of the amended complaint.

Count III of the amended complaint, filed about 4 months after the original amended complaint, alleged plaintiff's completion of the project,

that defendant had directed it to undertake "extra work" which plaintiff performed to the value of $158,000, and sought recovery of that sum. In response to a request for a bill of particulars as to the nature of each item making up the "extra work," and the nature of the action on the part of defendant constituting its order or direction therefor, plaintiff responded that the "extra work" was composed of storage costs, additional delivery costs, increased labor costs and additional overhead costs occasioned by defendant's actions in controlling the progress of the work, its general supervision and the delays in providing plaintiff access to construction sites. At the trial, plaintiff's executive vice-president, John Edwards, Jr., testified that "It was obvious *from the outset* that our contract could not be started on time." He identified plaintiff's exhibits 1 through 13, as "billings for extra work." These exhibits were admitted to evidence over defendant's objection that none pertain to items of "extra work" within the meaning of the contract, and that all relate solely to extra costs incurred in performing the original contract work, allegedly because of the delays. The judge before whom count III was tried admitted them to evidence with the observation: "The court feels, *if the suit will stand as originally filed, that these exhibits are admissible.*" (Emphasis added.)

■■ We have examined the exhibits. With the exception of items on exhibit 6 for $1,567.93, and on exhibit 13 for $683.20, which appear to have been for replacements and not extra work, all the billings pertain to added costs for original contract work, which defendant asserts to have been occasioned by the delays in getting access to the project site. The circuit court appears to have admitted them to evidence in support of dismissed counts I and II should these pleadings be reinstated, and not as evidence of "extra work" in support of count III. In our judgment none of the proof offered in support of count III was relevant or admissible to the cause pleaded, none of it was for "extra work" (*Howard Riley Homes, Inc. v. Wenzel*, 21 Ill.App.3d 1029, 316 N.E.2d 185 (4th Dist. 1974)), and as we have previously held, counts I and II were correctly dismissed. There being no competent proof of extra work in support of count III, the judgment order for plaintiff as to count III was in error.

The order of the circuit court dismissing counts I and II of the amended complaint was correct and is affirmed; the judgment order entered by the circuit court under count III in favor of plaintiff and against defendant was erroneous and is reversed.

Affirmed in part; reversed in part.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I do not agree with the view taken by the majority with respect to the order dismissing Counts I and II of the amended complaint.

It is well settled in Illinois that in the absence of contractual provisions to the contrary, a building or construction contractor has the right to recover damages resulting from the delay caused by the default of the contractee. *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E.2d 361 (failure to pay installments of price during course of construction); *Tobey v. Price*, 75 Ill. 645 (delay in furnishing materials for work on building); *Consumers Construction Co. v. County of Cook*, 1 Ill.App.3d 1087, 275 N.E.2d 696; *O'Heron v. American Bridge Co.*, 177 Ill.App. 405 (delay in delivery of material for building); *W. H. Stubbings Co. v. World's Columbian Exposition Co.*, 110 Ill.App. 210 (failure to have buildings ready so work could proceed within time contemplated by contract); *Michigan Avenue Methodist Episcopal Church v. Hearson*, 41 Ill.App. 89 (failure to have work of other contractors on building performed promptly); *Nelson v. Pickwick Associated Co.*, 30 Ill.App. 333 (failure to have building in such a state of forwardness as would enable work to be performed within time limited); see Annot., 91 L.Ed. 48 (1946); Annot., 115 A.L.R. 65 (1938); Annot., 70 L.Ed. 438 (1925).

As stated in *Consumers Construction Co. v. County of Cook*, 1 Ill.App. 3d 1087, 1094, 275 N.E.2d 696, the most recent case to consider this matter:

"* * * we hold that in a public works contract * * * where material delays arise without fault or culpability of the contractor, he may at his option either terminate the work or complete performance of his contract. In addition, we hold that where the owner bears responsibility for the delay, the contractor has an action against the owner for such damages as reasonably and proximately resulted from the delay; subject to the applicable provisions of the contract."

The complaint must, in order to be legally sufficient, allege the following: There was a delay in the work of the contractor; the contractor was damaged by the delay; there was a default by the contractee; and the contractee's default was the cause of the contractor's delay.

In the instant appeal, the only question regarding Counts I and II is whether the plaintiff sufficiently alleged a default by the defendant. Here, the amended complaint alleged that the defendant, Illinois State Toll Highway Authority, had the duty to prepare construction sites, as described in the contract, on or before the starting date of the contract, but defendant failed to have these construction sites prepared and available

for initiation of contract work. The complaint attributed the failure to prepare construction sites to the faulty and negligent scheduling by the defendant of the preparatory contracts. In particular, the defendant allegedly scheduled the same completion date for the preparatory work and for the work undertaken by the plaintiff.

I believe the plaintiff has sufficiently alleged a default by the defendant. Accordingly, I would reverse the order dismissing Counts I and II of the amended complaint.

In *W. H. Stubbings Co. v. World's Columbian Exposition Co.*, 110 Ill.App. 210, the contractor, as plaintiff, claimed the owner failed to have the buildings ready, so that the contractor could proceed with the work within the time contemplated in the original contract. The court, relying on *Tobey v. Price*, 75 Ill. 645, and *Michigan Avenue Methodist Episcopal Church v. Hearson*, 41 Ill.App. 89, held it was proper to allow damages for such a delay.

In *Nelson v. Pickwick Associated Co.*, 30 Ill.App. 333, 335, the contract contained the following provision:

> " 'Should delay be caused by other contractors, to the positive hindrance of the contractor hereto, a just and proper amount of extra time shall be allowed  *  *  *  provided they shall have given written notice  *  *  *  at the time of such hindrance or delay.' "

The contractor was delayed by other contractors, and, due to a rise in wages, he suffered damage which would not have resulted if he could have performed his contract within the time stipulated by him. The court held the provision for the allowance of extra time was not the only remedy of the contractor, and that he could recover damages for additional cost caused by the delay of the other contractors. In holding the contractee liable for the delay occasioned by other contractors (whose work preceded that of the plaintiff), the court based its decision on the ground that it was the legal duty of the contractee to keep the work in such a state of forwardness as to enable the contractor to perform the contract within the time specified. (See also *Michigan Avenue Methodist Episcopal Church v. Hearson*, 41 Ill.App. 89, where the contractor claimed the delay was caused by the failure of the contractee to have other work performed on the building on time. Although no completion date was fixed in the contract, the court held the contractee liable since the contract implied the contractee "will so arrange with reference to the other work on the building" in order that the contractor could complete his work within a reasonable time.)

These cases support the proposition that a contractee is under a legal duty to keep the work in such a state of readiness as to enable the con-

tractor to perform the contract within the time specified. Judged by this standard, the plaintiff's amended complaint was legally sufficient.

There remains for consideration the question whether the contract contained any provisions negating this duty. Ordinarily, recovery for a delay in construction work due to an act of the contractee will be precluded by the insertion of a so-called "no damages" clause, a provision against liability for delays, if the particular delay was one falling within the general terms of such provision. (Annot., 10 A.L.R.2d 801 (1950); see *Herlihy Mid-Continent Co. v. Sanitary District*, 390 Ill. 160, 60 N.E.2d 882; *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E.2d 361; *Ryan Co. v. Sanitary District*, 317 Ill.App. 549, 47 N.E.2d 576, *aff'd*, 390 Ill. 173, 60 N.E.2d 889.) The question therefore presented in cases involving such provisions is whether a particular delay falls within the terms of the particular provision.

In the instant appeal, the trial judge relied upon various specifications, which were made a part of the contract, when he dismissed the amended complaint. The record discloses that neither the contract nor the specifications made a part thereof contained a provision precluding recovery for damages due to delays caused by the defendant.

Specification 108.2, concerning the progress schedule, gave the defendant the right to require plaintiff to provide additional crews and to work additional shifts and hours, if the plaintiff fell behind the scheduled progress. In no way can this provision be construed as precluding claims by the contractor for damages due to a delay. Nor can specification 105.14, involving requests for extensions of time, be so construed.

The provisions relating to changes or revisions in the work made by defendant, or by suspensions or discontinuances ordered by defendant, do not relieve defendant of liability for delays caused by its acts. See *e.g., J. J. Brown Co. v. J. L. Simmons Co.*, 2 Ill.App.2d 132, 118 N.E.2d 781 (provision of subcontract giving general contractor the right to direct the sequence or general progress of work did not relieve it from liability to subcontractor for delay); *W. H. Stubbings Co. v. World's Columbian Exposition Co.*, 110 Ill.App. 210 (provision of contract giving contractee the right to make changes during the progress of the work not considered as relieving contractee of liability for delay).

The majority relies, in part, upon a provision relating to the scope of payment, apparently, to bolster its view that the right of recovery was expressly limited or precluded. I cannot understand how this provision, as set forth by the majority, deals in any manner with the question of liability for damages due to a delay.

If the defendant intended to protect itself from claims by the contractor due to delays caused by its acts, an appropriate "no damages" clause

could have been inserted in the contract. The contract did contain a provision precluding recovery for damages due to the delays of other contractors. (See, *e.g., Cook County v. Sexton,* 16 Ill.App. 93, *aff'd,* 115 Ill. 174, 28 N.E. 608 (under a provision in a contract expressly relieving the contractee from liability for delays occasioned by other contractors, a contractor was held not entitled to recover damages for delay which was due to the default of another contractor); *cf. Nelson v. Pickwick Associated Co.,* 30 Ill.App. 333.) This factor alone supports the view that the question of damages due to delay in general was considered by the parties, but the right of recovery for delays caused by the defendant was neither limited nor precluded by the contract.

The majority, however, determines the absence of a "no damages" clause, respecting delays caused by the defendant, "is compatible with the conclusion that the contract itself imposes *no duty* upon defendant \* \* \*." (Emphasis in original.) I believe this view does not comport with the cases cited above.

In *Herlihy Mid-Continent Co. v. Sanitary District,* 390 Ill. 160, 60 N.E.2d 882, and *Underground Construction Co. v. Sanitary District,* 367 Ill. 360, 11 N.E.2d 361, recovery was denied the contractor because of the presence in the contract of a "no damages" clause, by the terms of which the contractor agreed to waive all damages, except in certain minor respects not here relevant. Both opinions support the proposition that a contractor has the *right* to recover damages sustained by a delay which has been brought about by the contractee's default.

Unlike the majority which concludes that no "established duty" was alleged in the instant appeal, I believe the Illinois authorities herein relied upon amply demonstrate the existence of such a duty, subject to modification by the parties, as set forth in the express provisions of the contract. Since the contract in the case at bar contains no express provision either negating or modifying the defendant's common law duty to keep the work in a state of readiness, I believe the amended complaint sufficiently alleges a breach of that legal duty.

It would indeed be anomalous to hold no cause of action has been stated against the defendant as a matter of law, for such a holding would support the proposition that a contractee is not liable for delay, even in the absence of a provision precluding recovery for such delay. The effect of the majority holding would be to render the "no damages" clause superfluous, since the contractee would arguably not incur liability whether or not such a provision was included in the contract.

On several instances the majority points to the absence of discussion concerning a particular contractual provision, and assumes this omission means that the particular contract did not include such a provision. I do

not believe such an assumption is valid, for, as was stated in the case of *Consumers Construction Co. v. County of Cook*, 1 Ill.App.3d 1087, 1093, 275 N.E.2d 696: "In these public works cases, the contracts and specifications are generally of great length so that it is often difficult to tell from an opinion by the court precisely what provisions are included in the contract documents." Thus, the absence of discussion with respect to a particular provision does not necessarily mean the contract did not contain such a provision; the most to be said, with any assurance, is that even if the contract did include the particular provision, the court did not consider its insertion dispositive.

The majority also distinguishes *Consumers Construction Co.* from the instant appeal on the basis that the contract there contained a provision stating time was of the essence. The court in the *Consumers* case said, however, that the legal basis of the contractor's claim bore no relationship to the question of for whose benefit the time limitation was included in the contract. Instead, the court concluded the case law supported the contractor's contention that it was the duty of defendant as owner to take reasonable steps to avoid frustration of plaintiff's efforts by lengthy delays for which plaintiff had no responsibility.

The majority apparently believes that since the contractee did not expressly agree to perform some affirmative act which was necessarily preliminary to the contractor's performance, there could be no liability on the part of the contractee. This argument seems to permit recovery when the contractee agrees to perform some preliminary act, but not when the contractee fails to take some appropriate act. The distinction between an act and an omission to act, with recovery allowed in the former case, but not in the latter, fails to account for the harmful consequences which may result from a negligent omission, often as serious as those produced by a negligent commission.

The majority relies principally upon various Federal cases, which, I believe, are inapposite. For example, the majority analogizes the facts in *H. E. Crook Co. v. United States*, 270 U.S. 4, 70 L.Ed. 438, 46 S.Ct. 184, to those in the case at bar, and concludes that in *Crook* the similarity of completion dates between the complaining contractor and the preliminary contractors "was not held an incident of faulty or actionable scheduling by defendant, or a breach of any duty owed the plaintiff, but notice to plaintiff at the outset that the government had *no duty* to make the sites available by a fixed time." (Emphasis in original.)

*Crook*, however, is inapplicable to the instant appeal for the contract there included a provision that delays caused by the government would be regarded as unavoidable. Although the Supreme Court recognized this provision was probably inserted primarily for the contractor's bene-

fit as a ground for an extension of time, the court said it was not without bearing on what the contract had bound the government to do. Secondly, the contract in *Crook* showed that the buildings were in the process of construction by other contractors who might not keep up to the contract on time. These factors led the court to conclude that under the terms of the contract, the government did not bind itself to a fixed time for the work to end, since the day for completion was provisional.

As indicated in the majority opinion, the court in *Crook* conceded the contractor's only remedy was an extension of time. Therefore, even if *Crook* were applicable to the instant appeal, it would still support reversal of the order dismissing Count I, since the relief sought by that pleading was a reasonable extension of time for completion of the contract work. Although the majority relies upon *Crook* to support dismissal of both counts, even *Crook* would permit recovery under Count I.

More important, however, the Federal authorities, relied upon by the majority, involved claims against the United States. The dispositive holding in those cases was that the government could not be held liable for delay in making its work available to contractors unless the terms of the contract imposed such liability. *United States v. Howard P. Foley Co.*, 329 U.S. 64, 91 L.Ed. 44, 67 S.Ct. 154.

In Illinois, as the cases referred to above demonstrate, the law is otherwise. The law in Illinois is that a contractee is under a legal duty to keep the work in such a state of forwardness as to enable the contractor to perform the contract within the time specified, unless the contract provides otherwise. Annotations generally suggest that the weight of authority in other states is in accord with the Illinois rule, not the Federal rule. Annot., 91 L.Ed. 48 (1946); Annot., 115 A.L.R. 65 (1938); Annot., 70 L.Ed. 438 (1925).

Finally, the majority holds that plaintiff's amended complaint fails to allege the performance of all conditions precedent, as required by Supreme Court Rule 133 (Ill. Rev. Stat. 1973, ch. 110A, par. 133(c)), with respect to the contractual requirement relating to requests for extensions of time. The record discloses, however, that plaintiff alleged it "requested by letter on September 6, 1972, a written extension of the completion date but that the defendant, Illinois State Toll Highway Authority has refused to extend the completion date." I believe this statement sufficiently alleges the performance of the condition precedent as required by the contract.

For the foregoing reasons, I would reverse the order dismissing Counts I and II of the amended complaint. In other respects I would affirm the judgment.

I respectfully dissent.