PHŒNIX COTTON MANUFACTURING COMPANY *vs.* SAMUEL HAZEN & another.

Middlesex.    June 21. — Sept. 7, 1875.    COLT & AMES, JJ., absent.

A., who had owned and occupied a mill privilege on a stream since 1827, entered into an agreement in 1852 for the purpose of forming a reservoir company and of making a reservoir above his dam, by the terms of which he was to have the right at any time to raise his present dam so that the surface of the rollway thereof should

be eighteen feet above the surface of the opening of the breast wheel in his mill, the reservoir company was to build and keep in repair the reservoir, and to control the manner of preserving the water therein and of drawing water therefrom; and A. reserved the liberty of controlling the water in his lower pond as aforesaid in the same manner as if the agreement had not been made. Under this agreement the reservoir company, in which A. had an interest of one quarter, built the reservoir dam and maintained it until 1865, when another agreement was made with the trustees of the reservoir company, by which A. conveyed to them all his interest in the reservoir dam, together with the right to raise the dam four feet and flow his lands, the right to pass over his adjoining land to said dam and to take gravel therefrom for the purpose of repairing the dam, if necesary; and the trustees granted to A. the right to draw water from the reservoir pond through an aperture in the gateway of the dam at the rate of fifty cubic feet per second, at any and all times during working hours, for the purpose of running his mill or such other mill or mills as should be erected upon his privilege, when the trustees were not drawing that amount of water for their mill below, and agreed to keep the aperture in their gateway at the bottom of the dam. This agreement provided, like the prior one, that A. might raise his dam to the height of eighteen feet, that the trustees should not draw more than fifty cubic feet of water per second, and that they should not draw water at any time except during working hours, and also provided that A. should draw down his pond, when necessary, to enable the owners of the reservoir dam to repair it. *Held*, that a bill in equity by the grantee of the trustees against A., alleging that he used the water in violation of the provisions of the latter contract and praying that he might be enjoined from such user, could not be maintained upon proof that A. used the water of the pond for running his engine during the night and detained the water by his dam for some time in the morning after the gates of the reservoir dam were opened by the grantee, and that on several occasions, when the water was low, he filled his pond to the height of eighteen feet, and thus for a time prevented the water from flowing to the plaintiff's mill.

BILL IN EQUITY, filed November 27, 1872, by the grantee of the mill property of the United Society of Shirley by a deed dated October 1, 1866, against Samuel Hazen, the owner of mill property higher up the same stream, and Benjamin S. Binney, lessee of one of said Hazen's mills, to obtain the construction of a contract made April 17, 1865, between the trustees of the said United Society and the defendant Hazen, and praying that the defendants might be enjoined from violating the same. The nature of the case appears in the opinion.

*G. F. Hoar & S. Hoar*, for the plaintiff.

*F. A. Worcester & W. S. Gardner*, (*T. H. Sweetser* with them,) for the defendants.

MORTON, J. The defendant Hazen has owned and occupied his mill privilege since 1827. On May 7, 1852, he entered into an agreement for the purpose of forming "The Shirley Vil-

lage Reservoir Company," and of creating a reservoir above his dam.

By this agreement, Hazen was to have the right, at any time, to "raise his present dam so that the surface of the rollway thereof will be eighteen feet above the surface of the opening of said Hazen's present breast wheel " in his factory; the reservoir company were to build and keep in repair the reservoir, and they were to control the manner of preserving the water therein and of drawing water therefrom; but it is entirely clear that it was not the intention to affect in any way the right of Hazen to use the water after it left the reservoir, as the agreement contains the provision that " the said Hazen reserves the liberty of controlling the water in his said lower pond raised as aforesaid in the same manner as though this agreeement had not been made." Under this agreement the reservoir company, in which Hazen was interested to the extent of a quarter part, built the reservoir dam, and maintained it until April 17, 1865, when the agreement upon which this suit is founded was made.

The bill does not proceed upon the ground that the defendants, as riparian proprietors, have made an unreasonable use of the water of the stream to the injury of the plaintiff's mill below; but it alleges only that they have used the water in violation of the provisions of this contract.

Hazen, as owner of his privilege, has the right to use the water of the stream in a reasonable manner, unless he has limited or restricted this right by his contract with the plaintiff's grantors, and the only question in this case is, whether the plaintiff has proved any acts of Hazen or his lessees which are prohibited by his contract.

By the agreement of 1865, Hazen conveys to the trustees of the United Society in Shirley, who, with him, were joint owners of the reservoir, all his interest in the reservoir dam, together with the right to raise the dam four feet and flow his lands, the right to pass over his adjoining land to said dam, and to take gravel therefrom for the purpose of repairing the dam if necessary. The said trustees grant to Hazen the right to draw water from the reservoir pond through an aperture in the gateway of the dam, at the rate of fifty cubic feet of water per second, at any and all times during working hours, for the purpose of run-

ning said Hazen's mill or such other mill or mills as shall be erected upon his privilege, when said trustees are not drawing said amount of water for their mill below. They also agree to keep the aperture in their gateway at the bottom of the dam. The agreement contains the same provision contained in the contract of 1852, that Hazen might raise his dam to the height of eighteen feet, and restricts the trustees from drawing more than fifty cubic feet of water per second, and from drawing water at any time except during working hours. It contains no provisions which in any way restrict the rights of Hazen in the ordinary use of his dam and pond. The only provision upon this subject is a stipulation that Hazen shall draw down his pond when it is necessary to do so to enable the owners of the reservoir dam to repair it. The right which he had, as owner of his privilege, to use his dam and pond in such reasonable manner as the exigencies of his mill required, cannot be taken away or restricted except by his consent and agreement.

It seems to us clear, construing the agreement of 1865 in connection with the agreement of 1852, that it was the intention of Hazen to retain the entire control of his dam and pond, that he had the right to use the water in his pond, after it left the reservoir, in the same manner as if these agreements had not been made, and therefore that he and his lessees had the right to keep his dam at the height of eighteen feet and to use the water as the exigencies of his mill required.

It follows from this view of the contract that the plaintiff's bill cannot be maintained upon the proofs. The only acts proved to have been done by the defendants are that they used the water of their pond for running their engine during the night and detained the water by their dam for some time in the morning after the gates of the reservoir dam were opened by the plaintiff, and that on several occasions when the water was low they filled their pond to the height of eighteen feet and thus for a time prevented the water from flowing to the plaintiff's mill. These acts they had a right to do as owners of their dam, and, as we have before seen, this right was not defeated or limited by any of the provisions of either of their contracts with the grantors of the plaintiff.

We are inclined to the opinion that by the fair construction of the provision of the contract, which gives to Hazen the right to

draw through the gate of the reservoir dam, at any and all times during working hours, fifty cubic feet of water per second, he would be entitled to draw water during the night if required to run his mill. Though at the time the agreement was made he had a cotton mill on his privilege, it is clear that the contract contemplates that he might erect other mills thereon, and provides that he is to draw water for the purpose of running his mill " or such other mill or mills as may be erected upon his said privilege." When, therefore, he turned his cotton mill into a paper mill, we think he had the right to draw water during the working hours of such paper mill for the purpose of running it. But it is not necessary to decide this question, because there is no proof that Hazen or his lessees have drawn water from the reservoir during the night. The plaintiff had control of the key of the gate of the reservoir dam, and it is not shown that either of the defendants ever drew water except during the day.

*Bill dismissed.*