BENJAMIN S. BINNEY vs. PHŒNIX COTTON MANUFACTURING
COMPANY.

Middlesex.    Jan. 14. — March 2, 1880.    COLT & LORD, JJ., absent.

A. and B., owners of mills on a small stream, and of a dam and reservoir, built
for the purpose of supplying water to the mills, entered into an agreement, by
the terms of which B. conveyed to A. all his interest in the dam and reservoir,
together with the right of passing over B.'s land to the dam for the purpose
of drawing water from the reservoir, during working hours, at the rate of fifty
cubic feet per second for the operation of A.'s mill; and A. conveyed to B. the
right of using said dam for the purpose of drawing water from the reservoir
at the rate of fifty cubic feet of water per second "at any and all times during
working hours" for the purpose of running B.'s mill "or such other mill or
mills as may be erected on his privilege." The agreement further provided
that, if A. should waste the water in the reservoir or draw therefrom at other
times than working hours, so that B. should fail to have the supply of water
required for his mill, the agreement should be void. At the time the agree-
ment was made, the mills on the stream were cotton-mills, the working hours
of which were eleven hours a day. B. subsequently changed his mill to a paper-
mill, which ran day and night. *Held,* that the term "working hours" meant
the working hours of the mills at the date of the agreement; and that B. could
not maintain an action against A. for preventing him from using the water at
night.

CONTRACT, with a count in tort, for the unlawful detention
by the defendant of water in the Shirley Reservoir, so called.

At the trial in this court, before *Colt*, J., it appeared that the
plaintiff had a lease from Samuel Hazen of a mill with the right
to draw water from the Shirley Reservoir, to the full extent
secured to Hazen by an indenture entered into by him on April
17, 1865, with the trustees of the United Society in Shirley;
and that the defendant claimed title under a deed from the same
trustees, which conveyed to it another mill and all the rights of
the trustees in the reservoir as modified by the same contract
between Hazen and the trustees.

The judge directed a verdict for the plaintiff; and reported
the case for the determination of the full court, such judgment
to be entered as law and justice might require. The material
provisions of the contract of April 17, 1865, and other facts essen-
tial to an understanding of the case, appear in the opinion.

*E. R. Hoar & S. Hoar*, for the defendant.

*T. H. Sweetser & F. A. Worcester*, for the plaintiff.

MORTON, J.    The right of the plaintiff to maintain this action depends entirely upon the construction of the contract of April 17, 1865. In *Phœnix Cotton Manuf. Co.* v. *Hazen,* 118 Mass. 350, it is said in the opinion that we were inclined to think that by this contract Hazen had the right to draw water from the reservoir during the night if required to run his mill.    But, as is there stated, it was not necessary to decide that question; and, upon a more careful consideration of the subject, we are of opinion that such a construction is not in accordance with the understanding and intentions of the parties to the contract.    By the contract, Hazen conveys to the trustees of the United Society in Shirley all the interest which he had as joint owner with them in the reservoir and its dam; "also the right, privilege and easement of passing over land of said Hazen to said dam at any and all times for the purpose of drawing water from said pond, during working hours, through an aperture in the gateway of said dam, at the rate of fifty cubic feet of water per second, for the operation of the Phœnix Mill in said Shirley, or any other mill or mills erected on the same privilege."

The trustees sell and assign to Hazen, "his heirs and assigns, the right and privilege of using said dam for the purpose of drawing water therefrom for the use of the factory of said Hazen, situated at or near said Hazen's dam next below said reservoir dam, and all the right, easement and privilege of entering upon said reservoir dam, at any and all times, for the purpose of drawing from said reservoir pond, through an aperture in the gateway of said dam, fifty cubic feet of water per second, (if there be water sufficient in said pond,) at any and all times during working hours, for the purpose of running the mill of said Hazen situated next below said reservoir dam, or such other mill or mills as may be erected upon his said privilege, when said trustees, their successors or assigns, are not drawing said quantity of water for the use of their mill or mills; and if the said trustees, their successors or assigns, shall draw for the use of their mill or mills less than fifty cubic feet of water per second, then the said Hazen, his heirs and assigns, shall have the right and privilege of drawing so much water as shall make up the amount of water drawn to fifty cubic feet per second."

The contract also contains the further provision, "that if the

said United Society, the said trustees and their successors in office or trust, or their assigns, shall, for the space of one year, neglect to maintain and keep up said dam, or waste the water in said reservoir pond or draw more than fifty cubic feet of water per second therefrom, or draw water therefrom at other times than working hours, so that said Hazen, his heirs or assigns, shall fail to have the supply of water required for the operation of the machinery of his mill or mills next below said reservoir dam, and to fully or substantially comply with all the agreements and stipulations contained in this writing, then this instrument shall be void and of no effect."

The object of the parties was to restrict the quantity of water which Hazen could rightly draw from the reservoir. The restriction extended, not only to the amount of water he could draw per second, but also to the hours of the day during which he could draw water. The language used to express the restriction as to time, "at any and all times during working hours for the purpose of running the mill of said Hazen," or such other mill as may be erected on his privilege, is equivocal. The plaintiff contends that, having built on the Hazen privilege a paper-mill, which is run night and day, he has the right to draw water during the whole of the twenty-four hours of the day for the purpose of running his mill. The defendant contends that the words "during working hours" mean the usual working hours of the cotton-mills upon the stream.

Looking at the situation and general purposes of the parties, to aid us in ascertaining the meaning with which they intended to use this language, we are of opinion that the construction of the defendant is the right one. At the time the contract was made, there were three mills on the stream, all of which were cotton-mills, whose working hours were eleven hours per day. The stream was a small one, and there was a necessity for a careful storing and an economical use of the water, in order to furnish an adequate supply for them as they were then run. The purpose of the parties was to put some restriction upon the time during which water could be drawn; it is not reasonable to suppose that it was contemplated that one of the parties might, by building a new mill, or changing his business in the old one, draw water to the extent of fifty cubic feet per second

during the whole of the twenty-four hours, and thus obtain the exclusive use and benefit of a large part of the water for twelve or more hours of the day, to the injury of the other mill-owners. Such a construction would defeat the principal purpose which all had in view, of storing water during the night so as to fur nish a supply when the mills were running. We are of opinion that, by the expression "during working hours," used in this and in other clauses of the contract, the parties meant the usual working hours of the mills on that stream. Under it, Hazen had the right to draw water during the usual working hours, and then only for the purpose of running the mill on his privilege. The addition of the words, "or such other mill or mills as may be erected upon his said privilege," was not intended to enlarge the limit of time designated as working hours, but to protect him from the possible claim that the right applied only to his mill then existing.

It follows that, as the defendant has only prevented the plaintiff from drawing water in the night-time, the plaintiff cannot maintain this action upon either count.

*Judgment for the defendant.*