## ISAKSSON *v.* WILLIAMS and others.[1]

*(District Court, S. D. New York.   February 8, 1886.)*

1. EVIDENCE — CHARTER-PARTY — WHEN LIMITED BY PAROL EVIDENCE OF CUSTOM—STEVEDORE—CUSTOM AS TO PAYMENT—FOREIGN MASTER, IGNORANT OF CUSTOM.

    Where the words "stevedore to be selected by charterers, and paid by them," were inserted in the charter-party of a Russian ship, bringing hides from Montevideo to New York, and it appeared that the custom of this trade is for the ship to pay for a stevedore at New York, and the understanding of the trade is that a clause such as the above relates to a stevedore at the port of loading only; but it also appeared that the master had never before brought a cargo of hides or been to New York, and had no knowledge of the custom, —on suit brought by the captain against the charterers to recover money paid a stevedore at the port of discharge, *held*, that the clause, by its context, was specially connected with the port of discharge; that, construed independently of its context, it would naturally import payment by the charterers of all necessary services of a stevedore at port of lading or discharge, but might be limited, by proof of usage, to either port, provided it further appeared that both parties knew of the usage, and contracted with reference to it; but as it appeared that the master in this case had no knowledge of the custom, it could not be set up against him to defeat his rights under the charter-party, construed according to the natural import of its terms. *Held, also*, that the custom was at best one of persistent carelessness and inaccuracy, calculated, if not intended, to mislead and deceive those ignorant of it, and hence entitled to no favor, and admissible only on clear proof that the parties intended to be governed by it.

2. USAGE—GENERAL AND SPECIAL—PRESUMPTION OF KNOWLEDGE—EFFECT.

    "If a usage is general, both parties are presumed to know it, and to contract in reference to it.   If it is special and confined to a particular business, or has reference to a particular port only, there is no such presumption, and it would be unjust to admit it in order to restrict the natural meaning of a written contract, except upon proof that both parties were aware of and intended to be governed by it."

3. SPECIAL CUSTOM—PRESUMPTION—BY WHAT REBUTTED—WEIGHT.

    "Even if, as respects a special custom in a particular trade, or between particular ports, there is a presumption that parties in the business contract in reference to the custom, this presumption is at best but a *prima facie* one, liable to be rebutted by proof that it was unknown to the party against whom it is set up, and on that being proved, no weight ought to be given it."

In Admiralty.

*H. Putnam,* for libelant.

*S. M. Adams* and *John A. Deady,* for respondents.

BROWN, J.   This libel was filed to recover the sum of $360, paid by the master of the bark Pehr Brahe for stevedore's services in discharging a cargo of hides at New York in January, 1885.   The de-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

mand is founded upon the provisions of a charter of affreightment, executed by the respondents at Montevideo, for the transportation of the cargo of hides thence to New York. The charter, besides the usual provisions, contained the following stipulations:

"The cargo to be shipped at the port of loading, and delivered at port of discharge, as customary, say to be brought to and taken from along-side the vessel at charterers' expense and risk; * * * thirty-five running days (Sundays excepted) to be allowed for loading at port of loading. Discharging at port of delivery as customary *The stevedore to be selected by charterers, and paid by them* the time employed in taking in ballast and changing ports of loading not to count as lay days."

In the original charter the sentence in italics is in writing, interjected in the midst of a printed sentence about the lay days. The other clauses are printed. On the arrival of the vessel in New York, the master called upon the respondents' agents to select and furnish a stevedore, which they declined to do. The master thereupon employed a stevedore to discharge the hides, at an expense of $360; a portion of the crew assisting in the work, for whose services no charge was made. The value of the stevedore's work is not disputed.

The defense is that, by the established custom and usage of the trade in hides between Montevideo and New York upon charters in the same form as this, the ship is to pay for the services of a stevedore at New York; and that the understanding of the trade is that the clause in question relates to the employment of a stevedore at the port of loading only. The evidence offered at the trial was abundant to prove the alleged custom and understanding in this trade, as regards the ship's duty to pay for a stevedore in discharging at the port of New York, upon a charter like the present. The evidence was admitted provisionally under objection; and the case turns upon the competency of the evidence, and its effect as respects the master, who had no knowledge of the custom.

1. The clause in regard to the stevedore is written in the charter-party immediately following the printed words "discharging at the port of delivery as customary;" a clause relating to the *time* within which the discharge is to be made. Its position naturally connects it especially with the port of discharge, and with the acts of the parties at the port of delivery. If any weight were to be given to the circumstance that the word "stevedore" is used in the singular number, the natural reading of the charter would therefore confine its construction to the stevedore to be employed at the port of discharge only. The effect of the whole clause would then be that the stevedore at the port of discharge was to be selected and paid by the charterers; and that, for any delay in discharging beyond the customary period, the charterers must pay. Considering that the clause relating to the stevedore is inserted in the midst of a sentence relating exclusively to the port of discharge, and that its insertion there cannot be treated as a mere mistake or accident, since the very defense is that

the practice of thus inserting the clause is usual and customary, there is little rational ground for the claim of the respondents to disconnect it with the port of discharge.

But, giving to the charter the broadest latitude that is claimed for it as a commercial document, and treating the clause in question as an independent one that might appear in any part of the charter, disconnected from its present context, and construing the phrase in furtherance of the presumed intention of the parties, the phrase would naturally be interpreted as including the stevedore at the port of discharge as well as at the port of loading, provided a stevedore should there be necessary. The charter being for a lump sum, a stevedore was employed at the port of loading, in the charterer's interest, in order that the hides might be stowed as compactly as possible. To accomplish this, the hides of different consignees were mixed, and so stowed as to require a stevedore's services at the port of discharge. The necessity of a stevedore in unloading was admitted at the trial. Upon these facts the natural meaning and import of the clause relating to the stevedore are to require the charterers to pay for all necessary services of a stevedore at the port of discharge, as well as at the port of loading. But if the clause were regarded as ambiguous, from the use of the singular number, the general rule is that ambiguities in phrases inserted by the charterers are construed against them, and in favor of the ship. *The Martha,* 3 Rob. Adm. 106; *The John H. Pearson,* 14 Fed. Rep. 749, 752; *Carr* v. *Austin, etc.,* Id. 419; *Merrill* v. *Arey,* 3 Ware, 215, 218.

2. In the case of *Barnard* v. *Kellogg,* 10 Wall. 383, 390, the office of custom or usage is stated as follows:

"The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract,—whether written or in parol,—which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation, on the theory that the parties knew of its existence, and contracted with reference to it. It is often employed to explain words and phrases in a contract of doubtful signification, or which may be understood in different senses, according to the subject-matter to which they are applied. But if it be inconsistent with the contract, or expressly or by necessary implication contradicts it, it cannot be received in evidence to affect it. 'Usage,' says Lord Lyndhurst, 'may be admissible to explain what is doubtful; it is never admissible to contradict what is plain.' And it is well settled that usage cannot be allowed to subvert the settled rules of law."

So, in the case of *Merchants' Bank* v. *State Bank,* 10 Wall. 604, 667, Mr. Justice Clifford uses the following language:

"Evidence of usage is admissible in mercantile contracts to prove that the words in which the contract is expressed in the particular trade to which the contract refers, are used in a particular sense, and different from the sense which they ordinarily import; and it is also admissible in certain cases for the purpose of annexing incidents to the contract in matters upon which the contract is silent; but it is never admissible to make a contract, or to add a new element to the terms of a contract previously made by the parties.

Such evidence may be introduced to explain what is ambiguous and doubtful, but it is never admissible to vary or contradict what is plain. Where the language employed is technical or ambiguous, such evidence is admitted for the purpose of defining what is uncertain; but it is never properly admitted to alter a general principle or rule of law, nor to make the legal rights or liabilities of the parties other or different from what they are by the common law."

The usage offered to be proved in this case was not for the purpose of showing that the term "stevedore" meant anything different in this charter from its ordinary signification; nor would the effect of the evidence, if received, be to nullify the effect of the clause as it stands; for the charterers did select and pay for a stevedore at the port of loading. The purpose of the evidence of this usage is to limit the extent of the application of the clause in question by confining it to the port of loading only. Considering that the phrase is used in the singular number; that it is only by construction that it would be made ordinarily applicable, in the plural sense, to all the stevedores that might be necessary in the ordinary course of the voyage; and that the office of all construction and usage is to get at the intent,—I think that, if the clause in question could be justly severed from its context, the evidence of usage would be competent, and should be received in order to restrict the application of the phrase so as to accord with the actual intention of those who well knew the usage and contracted in reference to it. If a usage is general, both parties are presumed to know it, and to contract in reference to it. If it is special, and confined to a particular business, or has reference to a particular port only, there is no such presumption; and it is manifest that it would be unjust to admit it in order to restrict the natural meaning of a written contract, except upon proof that both parties were aware of the particular usage and intended to be governed by it. Even if, as respects a special custom in a particular trade, or between particular ports, there is a presumption that parties who are engaged in that trade contract in reference to the particular custom, this presumption is at best but a *prima facie* one, liable to be rebutted by proof that it was unknown to the party against whom it is set up; and, on that being proved, no weight ought to be given to it. This point was fully considered and sustained in the case of *Walls* v. *Bailey*, 49 N. Y. 464. Such, also, was the decision in *Kirchner* v. *Venus*, 12 Moore, P. C. 361; *Caldwell* v. *Dawson*, 4 Metc. (Ky.) 121; *Wheeler* v. *Newbould*, 5 Duer, 29, affirmed 16 N. Y. 392. See, also, *Insurance Cos.* v. *Wright*, 1 Wall. 456, 470; *Belmont* v. *Tyson*, 3 Blatchf. 530, 534; *Garrison* v. *Memphis Ins. Co.*, 19 How. 312, 316; *Bliven* v. *Screw Co.*, 23 How. 420, 431.

In the present case the bark was Russian, and the master a Russian, who had never before brought a cargo of hides from Montevideo to New York, and had never before come to this port. He testifies explicitly that he had no knowledge of the alleged custom, and there is no reason to discredit his testimony. On arrival at New York, he

called at once upon the ship's agents to furnish a stevedore in accordance with the apparent meaning, and with his understanding, of the charter-party. At Montevideo, when he observed the stevedore mixing the different consignments, he objected, saying that he might be blamed at New York. In reply, according to his testimony, one of the respondents told him that it made no difference to him, as he had nothing to do with the stevedore's bill on discharge.

It is urged that this testimony of the captain is not to be credited, because inconsistent with the present claim. Although, in a strict sense, the master might not be called on to object to mixing the hides at Montevideo if it were understood that the charterer's stevedore was to unload them at New York, yet mixing them would greatly add to the trouble of discharging; and it might, I think, well be considered by the master as likely to cause him to be blamed in New York, even if he were not obliged to pay the bill. I cannot recognize in this testimony, therefore, any such inconsistency as should discredit the master's testimony. Upon the evidence as it stands, it must be held that the master had no knowledge of the alleged custom; and that it therefore cannot be set up, as against him, to defeat his rights under the charter-party, construed according to the natural import of its terms.

The special customs so frequently invoked to modify the apparent rights of parties have been often a subject of judicial criticism. The custom invoked in this case is one specially open to objection. The charter is drawn in favor of charterers, at their port of residence, by brokers residing there, with secret reference to a custom taking effect at a distant port, materially modifying the fair import of the charter, and imposing a very considerable pecuniary burden upon the ship. If the open intention of the parties had been to limit the clause relating to the stevedore to the port of loading, nothing would seem simpler or more natural than to have inserted those words of limitation; so that the clause would have read "stevedore at the port of loading." To omit all such words of limitation, and to rely upon an alleged custom to supply their place, without making any mention of the custom to the master,—particularly a foreign master,—as in this case, who has little or no knowledge of the language in which the charter is drawn, and has never before made a similar charter or a similar voyage, is in the highest degree calculated to mislead and deceive. The very existence of the alleged usage, and the customary omission of the words "at the port of loading," when that limitation is intended by the resident parties, suggests no little suspicion that this practice is maintained, if it did not originate, from a willingness at the port of loading to mislead and to take advantage of foreign masters who are ignorant of the usage, and in consequence accede to lower freights. At best, the usage is but a usage of persistent carelessness and inaccuracy in expression, or else of intentional misrepresentation. In any aspect, it is directly calculated to deceive those

who are ignorant of it, because it serves as a material limitation on the natural import of the contract. It is therefore entitled to no favor, and can have no legal support, except upon proof that both parties had knowledge of the usage, and contracted in reference to it. As the contrary appears in this case, the defense cannot prevail, and there must be a decree for the libelant for $360, with interest and costs.