## THE PRINCIPIA.[1]

### ALEXANDRE et al. v. THE PRINCIPIA.

*(District Court, S. D. New York. March 28, 1888.)*

1. SHIPPING—CHARTER-PARTY—"WORKING HOURS"—CUSTOM OF PORT.
   The phrase "working hours" in a clause of a charter-party means those hours during which work is ordinarily done about the business to which the clause relates, and is to be construed according to the custom of the port as to the working and hauling of vessels in loading and discharging.

2. SAME—BURDEN OF PROOF.
   In the charter-party under which libelants chartered claimants' steam-ship P. was a clause providing that "in the event of damage preventing the working of the ship for more than 24 working hours" payment of hire should cease till she should be again fit to resume her service. The steam-ship, having broken a propeller blade, was dry-docked for repairs on the afternoon of Saturday, and was taken off on Monday afternoon. Libelants claimed a rebate of charter money for the three days the vessel was on the dock, and brought this suit to enforce it, claiming that "24 working hours" meant hours during which work might possibly go on, *i. e.*, consecutively, night and day. Claimants contended that the phrase meant only the ordinary working hours in the handling of a ship in port, and that, on this construction, the vessel's repairs had not detained her for 24 working hours. *Held*, that the burden was on libelant to prove his interpretation of the clause, and that it was not proved.

In Admiralty. Action for rebate of charter money.

*A. O. Salter*, for libelants.

*R. D. Benedict*, for claimant.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BROWN, J. The libel is filed to recover a rebate of charter money. The libelants, in December, 1884, chartered the steam-ship Principia from her owners for 12 months. By the terms of the charter the owners were required to do certain repairs. By the nineteenth clause the "steamer was to be docked, and bottom cleaned and painted, if charterers think necessary, at least once in every six months, and payment of hire to be suspended until she is again in a proper state for the service." By the fourteenth article it was provided that "in the event * * * of damage preventing the working of the steamer for more than 24 working hours" the payment of hire should cease until she should be again in an "efficient state to resume her service." In the following April, having taken the ground upon one of her trips, and one of the blades of the propeller being broken, she was docked by the owners to make the necessary examination of her hull and to do needful repairs. She went upon the dock in the afternoon of Saturday, April, 26, and was taken off on the afternoon of Monday following. Duringt his time her hu.. was also painted. On the 8th of May the libelant presented a bill to the agents of the owners claiming a rebate for three days hire, amounting to $534.90, for the three days the vessel was on the dock. Payment was declined. The monthly hire was subsequently paid in advance for several months, until on the 7th of July when, upon negotiations, the charter was canceled by the payment by the libelants of $7,500. That sum was understood to embrace one month's hire in advance, and charges for agents' commissions, arbitration fees, and cables. In the negotiations for the cancellation of the charter no express allusion was made to the claim, which had previously been presented and rejected, for the rebate now in suit. A few days after the cancellation, and after payment of the money, the claim for rebate was renewed, and the present libel filed.

The claim originally made was for the time that the vessel was on the dock while being painted, under the nineteenth clause. The evidence shows clearly, however, that the charterers had made no demand or request that the bottom be cleaned or painted, and that that work was not necessary to be done at that time, but was voluntarily done by the master, in order to save the expense of subsequent docking; and that the painting did not extend at all the time the ship was necessarily on the dock for the other work. At the trial the complaint was allowed to be amended so as to include a demand under the fourteenth clause of the charter, i. e., "for damage for preventing the working of the steamer for more than 24 working hours." The evidence shows that the phrase "working of the steamer" refers to work in port, about any of the charterers' business with the ship, such as that pertaining to the loading or unloading of cargo. The effect of this clause, therefore, is that in case of any damage that prevents such working of the steamer for more than 24 of the ship's working hours, payment of hire shall cease. The libelants' claim that "24 working hours" means hours during which work might possibly be going on, that is, consecutively, night and day; the respondents say that the phrase means only the ordinary working hours in the handling of the ship in port, in the work of loading and discharg-

ing, and that this, under the regulations of the custom-house, is ordinarily from 8 to 10 hours per day only. The usual stipulations in charters on this subject are made in either of three forms, viz., by running days, by working days, or by working hours. The respondents contend that the latter form excludes holidays, the ordinary hours of rest, bad weather that disables from working, and any general disability, such as strikes. Only one witness was examined on each side in regard to the meaning of this phrase. The libelants' contention would give no effect to the word "working," and would be equivalent to striking that word out of the clause. This is not admissible in the construction of written instruments. In the absence of special proof of some different meaning, the words of the contract must be construed in their ordinary sense. Twenty-four working hours in this view would mean those hours during which work was ordinarily done about the business to which the clause relates. If, for instance, it was the usual practice in this port to work day and night consecutively, during good weather, the words would be construed to mean consecutive hours during such weather. Holidays would be admitted or excluded, according as by usage they were deemed, or were not deemed, a ship's working hours in port. The burden of proof is upon the libelants to establish the fact that "working hours" in this port means consecutive hours day and night; because, without that construction, the damage in this case, and the repairs on the ship, did not prevent the working of the steamer for so many as 24 working hours. I cannot find that the libelants have established this by any preponderance of evidence, and I am therefore constrained to dismiss the libel on this ground, without considering the effect of the subsequent cancellation of the charter.