## James J. Klaub, Appellee, v. Paulina Vokoun and Ben= jamin Vokoun, Appellants.

## Gen. No. 16,091.

1. MECHANIC'S LIENS—*effect of failure of contract to describe premises.* If the evidence is clear that the contract was made in reference to the lot described in the bill and the work was to be performed in the building thereon and that it was so understood by all the parties to the contract the failure of the contract to describe the premises is not material.

2. MECHANIC'S LIENS—*effect of failure to perform contract.* If a contractor fail without fault on the part of the owner to perform his contract by omitting a material part of the work contracted to be performed he is not entitled to a lien.

3. CONTRACTS—*construction where drafted in party's own handwriting.* If there is an ambiguity in such a contract it is to be construed most strongly against the party drafting the same.

4. CONTRACTS—*when and for what purpose custom competent.* Evidence of a custom and usage is not admissible to vary the terms of a contract but is admitted on the ground that the custom and usage entered into and became a part of the contract and the contract should be so read and construed. A custom to be competent must be so certain, uniform, general and well known that it must be presumed to have been contemplated by the parties entering into the contract in question.

Mechanic's lien. Appeal from the Circuit Court of Cook county; the HON. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded with directions. Opinion filed April 1, 1912.

DEWITT C. JONES, for appellants.

JOSEPH F. TRISKA, for appellee; DONALD L. MORRILL and ROBERT W. MILLAR, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The appellee filed a bill in the Circuit Court of Cook county against the appellants, seeking to enforce a

mechanic's lien on certain premises for plumbing work done by the appellee thereon. The cause was referred to a master in chancery who after a hearing reported that the allegations of the bill were sustained by the proof and recommended a decree be entered in accordance with the prayer of the bill. The chancellor entered a decree finding the facts as reported by the master and ordering the payment of the sum found due, $412, and in default thereof the said premises be sold, etc., in the usual form of such decrees, and the defendant appealed.

The work was performed under a written contract drawn by the appellee, accepted by the appellants and introduced in evidence, as follows:

"Tel. Yards 714.                Chicago,————19—.
M.————————

To James J. Klaub, Dr.,
Practical Plumbing, Gas Fitting and Sewerage.
Repairing neatly done. All work guaranteed.
4709 Western Ave. Blvd.

"This agreement: Between Mr. Vokoun and James J. Klaub, the Plumber, made this 12 day of Mar. '08, Witnesseth: That the said Jas. J. Klaub agreed to put in plumbing fixtures as stated below and for the sum of Four Hundred $400.00 Dollars. All connections from the sewer to the roof of the 2 flats to be completed as said this 12 day of Mar. 08.

Following fix. to be put in:
2 5-6 Corona Bath tub.
2 Wash down iron closet, High tank.
2 Iron Lavatories F. 5981 20x24.
2 Roll Rim Sinks.
2 30 gal. boilers.

All work to be
guaranteed.
(Seal) Jas. J. Klaub."

The appellee contended that the work was per-

formed according to the contract and, the appellants refusing to pay therefor, he was entitled to have enforced a mechanic's lien on the premises. The appellants contended that the contract not describing the premises, there could be no lien. We think the evidence is clear that the contract was made in reference, to the lot described in the bill and the work was to be performed in the building thereon, and that it was so understood by all the parties to the contract. Under the evidence the case of Bastrup v. Prendergast, 179 Ill. 553, is decisive and the contention cannot be sustained.

The appellants next urge that the appellee did not perform the work provided by the contract, in that he failed and refused to put in about forty-eight feet of pipe from the boiler to the stove in the kitchen and make the connections therewith, and also introduced evidence that one of the pipes and the sink leaked, and of other minor troubles not necessary to recite. The controversy was really over the construction of the contract in relation to said pipe from the boilers to the stove and connection therewith and referred to in the evidence as "stove connections." The appellants insisted that the contract included the stove connections and refused payment unless appellee so completed the contract. The cost of putting in the said connections was $37.50, and the appellee, claiming said connections did not come within the contract, refused to put them in. If he were right in this position he was entitled to a mechanic's lien. If the connections were included in the contract, the appellee, failing and refusing to put them in without fault on the part of the appellants, was not entitled to a lien.

The plan of the work, which was not offered in evidence, was submitted to the appellee, who figured on the same and then drew the said contract. He takes the position and testified that in "the usual and ordinary course pursued regarding stove connections in

connection with the job of plumbing of this kind," it was not "customary to consider stove connections a part of the general contracts for plumbing work upon a building or apartment of this kind," and that he put them in only "when it is in the contract and plainly written, and the owner agrees to pay for it extra from other contracts." Two witnesses, for many years engaged in the plumbing business, testified on behalf of the appellee. In answer to a question as to the said custom, the first witness said: "It is rarely done by the plumber," and in answer to the question, "In what cases is it done by the plumber?" said: "When it is specified. If it is not specified—well you might say the exception. I don't know as I ever had a contract requiring me to make the connection with the water front—to make the connection of the water front with the stove." The other witness testified in answer to a similar question, "Well, as a rule in these houses there are none; there are no stoves to connect until the tenant moves in." The record then shows the following questions and answers:

"Q. Is it any part of the implied duty of the plumber to put in such stove connections in connection with a general contract? A. No it is not. Q. Do you ever put them in? A. I have acted for the owner where the owner would live in the flat, as a matter of doing some carpenter work or something like that. We would in finishing up a house connect stoves; but not for the tenant as a general rule. Q. You put them in where there is an express agreement to put them in? A. Yes."

The appellee entered into a contract of his own wording, guaranteeing his work and agreeing to make "all connections from the sewer to the roof." If there be any ambiguity in this statement it must be construed most strongly against the party making the same—Rankin v. Rankin, 216 Ill. 132, and cases there cited—having regard, of course, to the whole con-

text. It would seem that the clause in the contract providing that the appellee make "all connections from the sewer to the roof" was clear and meant what the ordinary use of the language imports; and if there were any exceptions to so plain and unequivocal statement, the appellee in drawing the contract would have mentioned them. However, in order to maintain this bill and enforce a mechanic's lien on the premises therein described, the appellee must prove that the custom and usage as indicated entered into this contract, and it is on the rule of law that custom and usage enters into a contract that appellee relies, as we understand it.

Evidence of a custom and usage is not admissible to vary the terms of a contract, but is admitted on the ground that the custom and usage entered into and became a part of the contract, and under the law the contract should be so read and considered. The custom must be shown to have been known to both contracting parties—Corrigan v. Herrin, 44 Ill. App. 363; First Nat. Bank v. Mackey, 157 Ill. App. 408,— or that it was certain, uniform and so general and well known that both parties would be presumed to have knowledge thereof. Currie v. Syndicate, etc., 104 Ill. App. 165; American Insurance Co. v. France, 111 Ill. App. 310. In Bissell v. Ryan, 23 Ill. 566, the court said: "The proper office of a custom or usage in business is to ascertain and explain the intent of the parties. * * * It ought to be proved to be so general, uniform and frequent as to warrant that the party against whom the right is claimed had knowlededge of it and contracted with reference to it. * * * All the authorities concur in saying that if usage is relied upon, it must be shown to be ancient, certain, uniform, reasonable and so general as to furnish this presumption of knowledge by both parties." Turner v. Dawson, 50 Ill. 85; Packard v. Van Schoick,

58 Ill. 79; Cahn v. Mich. Cent. R. R. Co., 71 Ill. 96; Wilson v. Bauman, 80 Ill. 493; Lyon v. Culbertson et al., 83 Ill. 33; Coffman et al. v. Campbell & Co., 87 Ill. 98; C. C. C. & St. L. Ry. Co. v. Jenkins, 174 Ill. 398. To permit a custom to be construed as a part of a contract it seems it must, as expressed in Cahn v. Mich Cent. R. R. Co., *supra,* and repeated in Lyon v. Culbertson, *supra,* "be so uniformly acquiesced in, by length of time, that the jury will feel themselves constrained to say that it entered into the minds of the parties and made a part of the contract."

In Corrigan v. Herrin, 44 Ill. App. 363, wherein a retail milkman recovered from a lumber broker certain commissions on the sale of a bill of lumber, a custom prevailing among lumbermen pertaining to commissions was offered in evidence, and excluded. The court said: "The offer did not embrace the further necessary fact that the custom was known to both parties. Proof of a custom among lumbermen would not be binding upon a milkman unless it were shown that he knew of the custom and contracted with reference to it." In Swern v. Churchill, 155 Ill. App. 505, the court said: "when a trade, business or profession custom is involved, such custom is not considered to have entered into the contracts of others than those in the particlular trade, business or profession, those shown to have had actual knowledge of the custom and those shown to have had previous transactions or a course of dealings of such nature that knowledge, on their part, of the custom may be presumed. When a territorial or local custom is involved it is regarded to have entered into the contracts of those domiciled in the locality and perhaps of those who are permanently engaged in business in the locality where the custom exists. The doctrine that usage and custom affect contracts 'rests, except in particular instances, solely upon the theory that the parties in entering into

the compact had such usage in mind, stipulated with reference to it, and, hence, made it a part of their contract.' Germ. Am. Ins. Co. v. Commercial F. Ins. Co., 95 Ala. 469, 474. If a usage is special and confined to a particular business or has reference to a particular port only, there is no presumption that both parties had knowledge of it and contracted with reference to it. Isaksson v. Williams, 26 Fed. 642, 645. To the same effect, Van Hoesen v. Cameron, 54 Mich. 609, 614. True, a person who deals in a particular market must be regarded as dealing according to the general and uniform usage and custom of that market, in respect to days of delivery and otherwise, and as having knowledge thereof; but this rule does not apply to one having but a single transaction with a member of a profession, of which he is not himself a member, wherein exists a usage or custom by which it is sought to charge him on the ground it entered into his contract.

"When shown to exist, a particular usage and custom has the force of law within the sphere where established. An established usage and custom enters into the contracts of those within its sphere who are shown to know of its existence. Facts and circumstances may be shown which raise a presumption of knowledge of the existence of the usage and custom. A usage or practice, in order to have a standing in law as a custom, must be uniform within some sphere. It must also be long established and generally acquiesced in. Packer v. Pentecost, 50 Ill. App. 228, and cases there cited. 'A custom is something which has the force and effect of law; is law by the usage and consent of the people.' * * * A practice and usage in order to have become an established custom must have been uniformly acquiesced in; for, as customs owe their origin to common consent, lack of uniform acquiescence shows the want of such consent."

Other interesting cases holding to the same effect on

the question under discussion to which we desire to refer, without comment, are Kendall v. Russell, 5 Dana (Ky.), 501; Atkinson et al. v. Allen, 29 Ind. 375; Sawtelle v. Drew, 122 Mass. 228, and Eaton v. Gladwell, 108 Mich. 678.

On a careful reading of the evidence, whether it was intended to prove a territorial custom and usage or a custom and usage existing among plumbers, is not entirely clear. At any rate it is manifest from all the evidence in the case that the appellants had no knowledge of said custom and usage, admitting such a custom and usage proven, and, further, there is no pretense that it was so certain, uniform, general and well known that the appellants would be presumed to have known it and made the said contract with reference thereto. It necessarily follows that the said custom and usage did not enter into said contract and become binding upon the appellants. We therefore conclude that the appellee was not entitled to a mechanic's lien on the premises in question, and the decree is reversed and the cause remanded with instructions to dismiss the bill at complainant's costs.

*Reversed and remanded with directions.*