## Adam Groth & Company, Appellant, v. Goss & Guise, Appellee.

### Gen. No. 28,558.

1. BUILDING AND CONSTRUCTION CONTRACTS—*construction of provision for completion within specified number of "working days."* In an action for damages for breach of a building contract under which defendant was required to complete the contract in question within 140 "working days, * * * Sundays and holidays excepted" and which provided that the architect should have general supervision and direction with power to stop the work when necessary for the proper execution of the contract and during freezing weather, the time for completion of the building must be computed from the time of commencement of work on the contract until the date of defendant's refusal to resume it after an enforced delay caused by weather conditions, by excluding from the total elapsed time not only Sundays and holidays but also days when work was suspended under the conditions specified in the contract, especially where the contract describes non-working days as including such days.

2. BUILDING AND CONSTRUCTION CONTRACTS—*when extension of time for completion not shown.* In an action for damages by a contractor against a subcontractor for breach of a building contract, a claim of improper extension of the time for completion of the work in question so as to justify the subcontractor in refusing to complete his contract, cannot be predicated upon the fact that the total elapsed time from commencement of work to the date on which defendant was notified to continue work exceeded that prescribed in the contract for completion, where such claim excludes from consideration days which are specifically excluded by the contract from computation.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Reversed and remanded. Opinion filed March 10, 1924.

WINSTON, STRAWN & SHAW, for appellant; CHARLES J. MCFADDEN and EDWARD G. INCE, of counsel.

KING, BROWER & HURLBUT, for appellee.

Adam Groth & Co. v. Goss & Guise, 232 Ill. App. 450.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit to recover damages on account of defendant's alleged breach of a contract to furnish labor and material in connection with the construction of a school building at Joliet, Illinois. It was stipulated that the amount of damages was $2,117.96. At the close of plaintiff's case, upon motion, the court directed the jury to return a verdict in favor of defendant and from the judgment that plaintiff take nothing it appeals.

September 22, 1919, plaintiff entered into a written contract with the Board of School Inspectors of District 86, Will County, Illinois, to erect the Lincoln school building at Joliet. September 27 plaintiff and defendant entered into a written subcontract whereby defendant agreed to do the lathing and plastering for $6,110. This subcontract incorporated and adopted as a part thereof the articles, plans and specifications of the contract between plaintiff and the Board of School Inspectors, which contained a provision that the school building should be substantially completed "within one hundred and forty (140) working days * * * Sundays and holidays excepted." (Article 2, original contract.) It was also provided that "No masonry walls may be laid when the weather is cold enough to freeze the mortar without the express approval of the superintendent." (p. 17 Abst.) Also that the architect should have general supervision and direction of the work and "he has authority to stop the work whenever such stoppage may be necessary to insure proper execution of the contract." (Article 9, General Conditions of Contract.) These provisions were by suitable words made binding upon the subcontractors.

The contract was accepted by the school board October 13, although work was commenced on the building October 10, 1919. Plaintiff claims that during

December there were about 15 days in which it was impossible to work on account of freezing weather, and that in January also the weather was near zero so that the architect ordered the work stopped and that this stop order was not raised until March 15, 1920. Plaintiff claims that deducting such time gave 78 working days from the time work commenced to April 10, 1920; that on this last date plaintiff notified defendant to proceed with the work under the subcontract, but defendant refused to do so, justifying this refusal on the ground that more than 140 working days had then elapsed and that the price of labor and material had increased during that period. There was evidence that this work could have been done in from 30 to 40 days.

Plaintiff's position is that the delays were contemplated by and were within the provisions of the contract, and that if defendant had commenced its work when requested there would have been ample time to complete it within the 140 working days mentioned in the contract as the time limit for the completion of the building. The trial court, however, construed the time limit as 140 days, excepting only Sundays and holidays, all other days to be counted. We cannot concur in this construction as if the language were "140 days, Sundays and holidays excepted," instead of as the contract reads, "140 *working* days  *  *  * Sundays and holidays excepted." Following the well-established rule of construction which requires every word in a document to be given a reasonable meaning and interpretation if possible, we must give meaning to the word "working." A natural reading in this connection suggests that it was intended to describe "working days" as distinguished from "nonworking days," without reference to Sundays or holidays. On examining the contract further we find this confirmed by a specific description of nonworking days as those days when work would be prevented by freezing

weather or by order of the architect.  Obviously, then, the words "working days" mean, exclusive of Sundays and holidays, those days when the contractor may work and not the nonworking days when the prohibitory conditions named in the contract prevailed.  This construction gives the words "working days" a reasonable meaning entirely in harmony and consistent with the other provisions of the contract and based upon the provisions of the contract itself.

This work began in October and contemplated construction during the winter, so that it would be natural to expect in a contract for construction of a building in this region where work is usually stopped in cold weather, that it would provide for such contingencies.

Cases tending to support this construction are: *Mumm Contracting Co. v. Village of Kenmore*, 104 N. Y. Misc. 268, 171 N. Y. Supp. 673; *Christopher & Simpson, etc., Co. v. Steininger Const. Co.*, 200 Mo. App. 33, 205 S. W. 278; *Weber Chimney Co. v. Brunswick-Balke-Collender Co.*, 195 Ill. App. 9; *Binney v. Phœnix Cotton Mfg. Co.*, 128 Mass. 496; *Alexandre v. The Principia*, 34 Fed. 667; *Houge v. Woodruff*, 19 Fed. 136.

Decisions relating to maritime conditions are not in point.

It follows from our conclusion that upon another trial of this case there should be deducted from the 140 days within which the building was to be completed, not only Sundays and holidays, but all such days, if any, when work was suspended under the conditions specified in the contract.

This construction makes superfluous any evidence of a custom tending to explain the contract, which is not ambiguous in this respect.  But its introduction would not be prejudicial error and it need not be pleaded, for it is not introduced to alter or vary the terms of the instrument, but simply to show the local significance of such words as may not be understood

by those outside the particular business involved. *Myers v. Walker*, 24 Ill. 134; *City of Elgin v. Joslyn*, 136 Ill. 525; *El Reno Wholesale Grocery Co. v. Stocking*, 293 Ill. 495.

However, to prove a custom the locality must be defined and the length of time, and by more than one witness. *Bissell v. Ryan*, 23 Ill. 517; *Andalman v. Chicago & N. W. Ry. Co.*, 153 Ill. App. 169; *Kelly v. Carroll*, 223 Ill. App. 309; *Klaub v. Vokoun*, 169 Ill. App. 434, 438, 439.

The contract was also construed by the trial court to require written extension of time for completion of the building, and that the contractor and the subcontractor should join in a writing setting forth the conditions which justified such an extension of time. We are not referred to any provisions requiring such a joint writing and we do not find any in the contract.

The argument that there can be no extension unless a claim for the same is made by the contractor in writing to the architect is based upon a clause in article 35 of "The General Conditions of the Contract," which reads that "No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect." This seems to refer to the occasions for delay enumerated in the paragraph immediately preceding, such as delays caused by any act or neglect of the owner or architect or any employee or by changes ordered in the work, strikes, lockouts, fires, unusual delay by common carriers, unavoidable casualties, and the like. It would be incongruous to relate this requirement to the provisions giving the architect absolute authority to stop the work whenever, in his opinion, such stoppage was necessary. (Article 9.)

Furthermore, this provision was for the benefit of the owner and architect and could be waived by them, as it is claimed was done in this case.

The best answer to this point is that under our construction of the time clause there was no extension,

The time for completion was not by a fixed date but within 140 days to be counted by excluding Sundays and holidays and also what we have termed nonworking days. No one could properly claim that by excluding Sundays and holidays the time limit was extended, and by the same test excluding from the count the nonworking days would not be an extension. Computing the time as prescribed by the contract is not an extension of the time.

We cannot consider the arguments and claims based upon the conditions and progress of the work or on the weather, or any other questions of fact. Such matters are for the jury to determine. We are passing only upon the construction of the contract. As we are of the opinion that there was error in this respect, we hold that the peremptory instruction to find for defendant was erroneous, and the judgment based thereon is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MATCHETT, P. J., and JOHNSTON, J., concur.