CONSUMERS CONSTRUCTION COMPANY, Plaintiff-Appellant, v. THE COUNTY OF COOK, Defendant-Appellee.

(No. 54748;

First District—October 4, 1971.

Lewis W. Schlifkin and Edward A. Berman, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Daniel P. Coman and John J. Henely, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Consumers Construction Company (plaintiff) brought this action for damages based upon a written building contract with the County of Cook, a municipal corporation (defendant). The case was heard without a jury. At the close of all the evidence, the trial judge entered a finding and judgment for defendant. Plaintiff appeals.

The basic question raised by plaintiff is whether a cause of action exists in favor of a contractor in a public building contract for delays allegedly caused by defendant as owner. As a subsidiary contention, plaintiff claims that the trial judge erred in excluding competent evidence. Defendant contends that the provisions in the contract governing time of performance are exclusively for the benefit of defendant as owner and that the rulings of the court on evidentiary questions were proper. A factual statement is required. We will attempt to distinguish between agreed and controverted facts.

Defendant solicited bids for a written contract for additions and alterations to Cook County Children's Hospital in the City of Chicago. Thereafter, and on January 15, 1962, the parties entered into a brief written contract. This agreement incorporated therein by reference the advertisement of defendant for bids, the proposal made by plaintiff, the detailed specifications prepared by defendant prior to the taking of bids, all drawings and all other documents on file in the office of the purchasing agent of defendant. The total contract price was fixed at $531,900. The work was to be completed within 210 calendar days from execution of the contract. It was specified that time was of the essence of the contract. The specifications in question are a massive document containing hundreds of pages. It is unnecessary to attempt to summarize all of the de-

tailed provisions. We shall later point out certain essential particulars contained in this document.

Prior to the signing of the contract, defendant issued certain addenda which revised the specifications. The first addendum, dated December 7, 1961, set up a schedule of the various phases in completion of the job. Plaintiff examined all of these matters and the site itself prior to execution of the contract. Plaintiff was familiar with the first addendum when it entered its bid on the job. On January 29, 1962, a meeting at the job site was held between representatives of plaintiff and the architect for defendant. At that time, the architect was furnished with time schedules reflecting completion within the specified time limit and with an outline of the order in which the work was to be accomplished. No exception was ever taken by the architects to these matters.

It is agreed that, as the work progressed, various extras were requested by defendant or its representatives. It is also agreed that this extra work took up approximately 473 days; more than double the originally agreed time for the total work. Defendant paid for these extras in full in addition to the original contract price. In each case, these extras were approved by the purchasing agent of defendant as provided in the specifications. These extras have no bearing upon plaintiff's claim for damages. It is also agreed that the contract price was paid in full. It is undisputed that plaintiff did not complete the construction work until 972 days after signing of the contract. After deducting days expended on the extra work, calculation shows additional delays of 289 days.

The basic factual disagreement between these parties is whether these delays were caused by defendant. Defendant takes the position that, "* * * the record is barren of any direct evidence which would substantiate * * *" the contention that delays were caused by defendant or its architect. Plaintiff takes the position that it produced ample evidence to justify its contention of culpability of defendant but was prevented from doing so by erroneous rulings of the trial court. We will first attempt to resolve this conflict.

Plaintiff offered in evidence a large number of daily progress reports in an attempt to prove that the delays were caused by defendant. The contract between the parties provided that plaintiff was to prepare written progress reports every day, copies of which were to be delivered to the architect. (Specifications, Division 2, page 119, par. 130B.) The evidence is uncontradicted that plaintiff's superintendent prepared and gave copies of these reports to the architect every day in compliance with the contract. The reports were personally delivered to the architect's office. Notice to produce these reports was served upon defendant and the re-

tained copies in the possession of plaintiff were offered in evidence. The trial court sustained objection by defendant to these exhibits and rejected them. The theory of the court apparently was that the architect was not a general agent of defendant and had no right to modify the written agreement between the parties.

In our opinion, this ruling was erroneous. The issues of modification of the contract or general authority of the architect have no materiality here. The written contract between the parties specifically made provision for the preparation of these exhibits by plaintiff and for delivery of them to the architect. This made the architect the agent of defendant for the purpose of receiving the progress reports which were essential to discharge of the architect's duties and proper supervision of the project. Moreover, the basic modern approach to competency of evidence starts from the premise that all evidence is competent until the reverse be shown. The proof shows that these documents were kept in the ordinary course of business in performance of the contract. They were made pursuant to a specific requirement of the contract. This qualified them for admission as business records within the scope of Rule 236 of the Supreme Court of Illinois. (43 Ill.2d Rule 236(a).) The progress of the law of evidence from the early portion of the 17th century to this enlightened rule is set forth in the Committee comments pertaining to the rule.

This exclusionary ruling by the trial court deprived plaintiff of a fair opportunity of proving the factual essence of its claim; namely, that the delays were caused by defendant. For this reason, we are obliged to reverse the judgment and to remand the cause for a new trial so that the trial court can examine properly the reasons for the admitted delays. It is unnecessary for us to consider additional arguments advanced by plaintiff concerning other rulings by the trial court on evidence offered. As a guide to counsel and the court in future proceedings, we will state our opinion with reference to the legal issues raised in this appeal.

A question first arises regarding the written agreement. As above pointed out, the contract document signed by the parties stated, "work to be completed within 210 calendar days from date of signing of contract." The agreement also provided, "* * * that time shall be of the essence of this contract * * *." At the trial and in its brief here, defendant contends that provisions in a building contract requiring completion of the subject matter of the contract within a specified time are for the sole benefit of the owner and consequently may not be depended upon or used by plaintiff for any purpose whatsoever. The trial court agreed with this contention and therefore concluded that the lengthy delays in com-

pletion of the contract gave plaintiff no right to recover damages even if these delays were caused solely by the agents of the defendant or by third parties.

The only authority which lends credence to the major premise upon which this conclusion is based is *Adam Groth & Co. v. Goss & Guise*, 232 Ill.App. 450, decided by this court in 1924. That case involved a suit by a general contractor against a subcontractor in connection with school district construction. The contract provided for substantial completion "within 140 working days  *  *  *  Sundays and holidays excepted." There were various delays and defendant refused to perform the sub-contract on the ground that 140 working days had then elapsed. Concerning the time limitation, this court stated (232 Ill.App. 450 at 454):

> "Furthermore, this provision was for the benefit of the owner and architect and could be waived by them as it is claimed was done in this case."

■■ The court held that it was erroneous to direct a verdict in favor of the subcontractor and the case was remanded for another trial. We cannot regard *Adam Groth & Co.* as authority which supports the sweeping generalization advanced by defendant. The statement of the court must be considered in its application to the specific facts in the case. There, the reason for the delay was a work stoppage necessitated by freezing weather. The facts in the case at bar are completely different. Plaintiff here claims that inordinate delays which were costly and unfair to plaintiff were caused by conduct of defendant as owner. A generalization such as that advanced by plaintiff cannot be applied inflexibly to every case. All of the language in every contract represents the intention of both parties as solemnly reduced to writing. Each word of every written contract must be deemed applicable to both parties and must be carefully considered to arrive at a just and equitable result. The issue here is not the narrow one as to which party is to benefit by any particular language in the agreement. The issue presented by the pleadings in this case is whether the delays were caused by the defendant and its agents with no fault on the part of plaintiff; and, if so, to what extent plaintiff was damaged as a natural and proximate result of these delays.

■■ Furthermore, the issue of determination of the party for whose benefit the time limitation was included in the contract actually bears no relationship to the legal basis of plaintiff's claim. In the case at bar, the lengthy specifications provide that the right of the plaintiff as contractor to proceed shall not terminate because of any delays in the completion of the work due to unforeseeable causes beyond the control and without default or negligence of the plaintiff. (Specifications page 123, par. 139B.)

This gave plaintiff as contractor the option of continuing the work despite delays beyond his control.

Plaintiff takes the position that by necessary implication, arising from the very situation of the parties, it was the duty of defendant as owner to take reasonable steps to avoid frustration of plaintiff's efforts by lengthy delays for which plaintiff had no responsibility. This contention is strongly supported by cases decided in this and other jurisdictions.

In *W. H. Stubbings Co. v. World's Columbian Exposition Co.,* 110 Ill.App. 210, the contractor, as plaintiff, claimed that the buildings in question were not made ready by the owner for performance of the contract within the specified time. This court held that propriety of an allowance of damages for such delay should be recognized. The court cited *Tobey v. Price,* 75 Ill. 645, as authority for this statement. The court, therefore, reversed a jury verdict in favor of the owner. It is true, as pointed out by defendant in its brief, that a part of the controversy in Stubbings revolved about a claim for extras. However, the balance of the opinion, as above shown, supports plaintiff's theory.

Plaintiff's position is further bolstered by *Underground Construction Co. v. Sanitary District of Chicago,* 367 Ill. 360. Defendant seeks to differentiate this decision on the theory that the contract there involved an express stipulation making the defendant as owner liable for any negligence or omission of duty. We do not find such a provision in the contract stated in the opinion of the court. In these public works cases, the contracts and specifications are generally of great length so that it is often difficult to tell from an opinion by the court precisely what provisions are included in the contract documents. In our opinion, it is clear from a fair reading of this decision that the Supreme Court meant to and did declare that damages for delay caused by the owner might be recovered by the contractor. The conclusion by the Supreme Court is that where delays by the owner cause damage to the contractor by way of increasing his cost of performance, he may have an action against the owner.

We also note the citation with approval by our Supreme Court of the case of *State v. Feigle* (Ind.App. 1928), 162 N.E. 55, aff'd 204 Ind. 438, 178 N.E. 435. In that case, the court pointed out that the owner has an equitable duty of furnishing the contractor with a proper place to perform the work and that the owner may be liable in damages for losses occasioned by this breach.

In *North Shore Sewer & Water, Inc. v. Corbetta Construction Co.* (7th Cir. 1968), 395 F.2d 145, not cited by either party, the Court of Appeals held that an owner was liable to a contractor and a subcontractor for

damages caused by failure to remedy leakage in a sewer under its control which increased time of completion of the work from three to seven months. The Court of Appeals held that, "* * * where a landowner has either actively created or passively permitted to continue a condition over which he has control which renders performance of the contract more difficult or expensive, he has breached an implied contractual duty for which he must respond in damages." 395 F.2d 145 at 151. The court went on to quote from Corbin on Contracts (1960), section 571:

> "In any kind of contract, if the right of one party to compensation is conditional upon the rendition of some service or other performance by him or on his behalf, it is nearly always a breach of contract for the other party to act so as to prevent or to hinder and delay or to make more expensive the performance of the conditions." 395 F.2d 145 at 151.

The Court of Appeals affirmed the District Court ruling against the owner but remanded the case for a proper determination of damages.

■■ Based upon these authorities, we hold that in a public works contract such as involved in the case at bar, where material delays arise without fault or culpability of the contractor, he may at his option either terminate the work or complete performance of his contract. In addition, we hold that where the owner bears responsibility for the delay, the contractor has an action against the owner for such damages as reasonably and proximately resulted from the delay; subject to the applicable provisions of the contract.

■■ One and perhaps two *caveats* must be noted here. First, we do not imply in any manner by this opinion that plaintiff is entitled to judgment. We certainly express no opinion as to the amount of damages, if any, to which plaintiff may be entitled. These issues are completely open for the trier of fact so that a correct determination may be made as to whether the delays in question were actually caused by the defendant and its agents as alleged in plaintiff's complaint. If the question of damages is to be considered, the amount of such damages must be fixed with due regard for the provisions of the contract between the parties, including the lengthy specifications and all other contract documents. We note the clear language of the Supreme Court of Illinois in *Underground Construction Co. v. Sanitary District of Chicago*, 367 Ill. 360, 371. The court points out that damages in public contract cases must be determined in accordance with the specific provisions of the written agreement. The court stated (367 Ill. 360 at 371):

> "This is the contract of the parties, and, however strongly we might

feel that plaintiff has been more severely damaged, this court can declare the rights of the parties only by the contract, as the language of that instrument dictates."

■■ A portion of the trial record here is devoted to the issue of increased labor costs to plaintiff, allegedly resulting from delays in performance. The lengthy specifications, which form a part of the contract between the parties, provide that if the plaintiff found it necessary "* * * to exceed the prevailing salary or wage rates specified in his contract, any expense incurred by the contractor or subcontractors because of the payment of salaries or wages in excess of such amounts shall not be cause of any increase in the amount payable under this contract. The owner shall not consider or allow any claim for additional compensation made by the contractor or subcontractors because of such payments." Specifications, page 112, par. 121D.

In our opinion, the trial court should determine whether this language eliminates amounts of wage increases due to passage of time, if any are claimed, as an element of damages.

■■ Additionally, the remodeling work done by plaintiff was performed in a children's hospital. At the time, the building was occupied by sick patients. This created problems with reference to dust and noise. The building was located in a congested area of the City of Chicago with facilities for entrance of ambulances. This created a problem in connection with delivery of materials. The trial court should determine whether delays were caused by these circumstances. These matters were inherent in the nature and location of the site of the work and it was the duty of plaintiff as the contractor to examine these situations and to reflect their existence in its bid upon the job. The detailed specifications directly called the attention of the contractor to the fact that the building would remain in use during construction and the work was required to be performed in a manner that would cause a minimum of disturbance and interference to the occupants. (Specifications, Division 2, page 201, par. 203A, B; also Division 3, page 301, par. 304A, C.) It will be the duty of the trial court upon a retrial of this case carefully to segregate and eliminate any claimed damages caused by or flowing from these conditions.

We, therefore, reverse the judgment appealed from and remand the cause to the Circuit Court of Cook County with directions to proceed herein in a manner not inconsistent with this opinion.

Judgment reversed, cause remanded.

BURKE, P. J., and LYONS, J., concur.